665 P.2d 995

**STATE of Arizona, Appellee,**

v.

**Roger Lynn SMITH, Appellant.**

No. 5566.

Supreme Court of Arizona,
En Banc.

May 23, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Jack Roberts and Jessica Gifford, Asst. Attys. Gen., Phoenix, for appellee.

James H. Kemper, Phoenix, for appellant.

HAYS, Justice.

At about 10 o'clock on the morning of June 6, 1981 Roger Lynn Smith arrived at the Farmer's Liquor Store on South Central Avenue and Southern in Phoenix. He was with the Abila brothers, who had given him a ride as he hitchhiked to Phoenix; they rode in a car owned by one of the Abilas. Smith entered the store with a loaded sawed-off 20-gauge shotgun, took $158 from the cash register, and killed the clerk, Herman Helfand, with a single shot to the right temple. Smith then returned to the Abila vehicle and the three left the neighborhood.

Shortly after 5:00 in the evening on June 6, 1981 Officer Arthur Scott, of the Phoenix Police Department, and his partner, Reserve Officer Crosley, received an emergency call on their patrol car radio. The call reported a white male wearing blue jeans and no shirt who was "threatening" in the neighborhood of 30th Avenue and Sherman with a sawed-off shotgun. Scott and Crosley responded to the call and when they arrived they found Smith (who fit the description broadcast), the two Abilas and the Abilas' car which had become stuck in a hole in the dirt lot at the southeast corner of 30th and Sherman.

Smith was in the driver's seat of the car, turned to his left so that both feet were on the ground outside the open driver's door. His right arm was hanging by his side, with his hand in front of the seat, as Scott drove up. The Abila brothers were both outside the vehicle and Scott ordered all three to the rear of the car. Smith got out of the car and complied, leaving the driver's door open. At least two other police officers arrived on the scene immediately after Scott and Crosley, so Scott ordered one of them, Officer Mientel, to pat down all three

men for weapons. Mientel found and retrieved ten rounds of 20-gauge shotgun ammunition from the pockets of Smith's jeans.

As Mientel began the pat-down search of the three men, Scott looked in the open door and saw the barrel of a shotgun on the floor of the car immediately beneath the front edge of the seat Smith had occupied. Upon seeing the shotgun barrel, Scott looked up and to the rear of the car in time to see Mientel taking shotgun shells out of Smith's pockets. Scott directed Mientel to handcuff Smith and seized the sawed-off shotgun from the car. Smith was then arrested for possession of a prohibited weapon, and booked into the Maricopa County jail. Within days he was re-arrested at the jail for the murder of Herman Helfand.

Smith was tried separately from the Abilas upon stipulation of counsel for the state and for the appellant. The trial to a jury on one count of first degree murder and one count of armed robbery began on March 15, 1982. After a mistrial, a second jury was selected and heard the evidence beginning on March 17, 1982. They rendered their verdicts of guilty on March 22, 1982. Smith was sentenced to 15 years in prison for armed robbery and, for murder, the court sentenced appellant to death after an aggravation/mitigation hearing. He appeals to this court his convictions and the death sentence imposed in Count I.

We have jurisdiction pursuant to A.R.S. § 13–4031 and § 13–4035, and Ariz.Const. art. 6, § 5(3), to review the record of this prosecution and the imposition of the death sentence.

The parties have posed these seven issues on appeal:

1. Was it reversible error for the trial court to deny appellant's motion to suppress the shotgun ammunition seized from his person pursuant to a pat-down search?

2. Was it reversible error to permit the jury to hear testimony on the character and family life of the victim?

3. Was it reversible error to submit only guilty and not guilty forms of verdict on the first degree murder charge?

4. Was it fundamental error to allow the prosecutor to argue crime statistics to the jury when those statistics were not in evidence?

5. Is Arizona's death penalty statute unconstitutional because it deprives the jury of any participation in the sentencing procedure?

6. Is Arizona's death penalty statute unconstitutional because it allows the court discretion to ignore matters offered in mitigation?

7. Is Arizona's death penalty statute unconstitutional because it gives the trial court inadequate guidance in the balancing of aggravating and mitigating circumstances?

Because we remand this matter for resentencing, we have not considered the remaining issue briefed in this court concerning the trial court's finding of one aggravating circumstance.

## I. SUPPRESSION OF EVIDENCE

Appellant's first contention is that the trial court committed error when it denied his motion to preclude the use of the shotgun ammunition as evidence. His motion argued that the search of his person which produced this evidence was not supported by probable cause and could not be justified under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

█ Preliminarily, it is noted that the standard we apply in reviewing a trial court's ruling on a motion to suppress is "clear and manifest error," and we will not disturb such a ruling absent error of that degree. *State v. Williams,* 132 Ariz. 153, 644 P.2d 889 (1982). Moreover, we will view the facts in a light most favorable to sustaining the trial court's ruling. *State v. Warren,* 124 Ariz. 279, 603 P.2d 550 (App. 1979).

█ Police may detain persons for investigation in circumstances which do not

provide probable cause to arrest. When an officer is justified in believing that the detainee is armed, he may perform a pat-down search for weapons in the interest of safety. Finally, if a pat-down search produces an indication that the detainee has a weapon on his person, or what might be a weapon, the officer may retrieve it by reaching into or beneath the subject's clothing. *Terry v. Ohio, supra.*

■ Appellant and the state agree that Officer Scott was justified in detaining Smith, and we agree as well. Smith fit the description of a man that Scott had been told was at that location, dressed as Smith was and in possession of an illegal lethal weapon. Further, we agree with the parties that Scott was justified by these circumstances in having Smith patted down for weapons. Finally, we find that the police reasonably decided to inspect the contents of Smith's pockets which were bulging with shotgun ammunition. The police radio call had told both officers they might confront a shotgun, and therefore the search for and seizure of the shotgun shells was justified under *Terry.* Because we find that the shotgun rounds were legally seized, we hold that it was not error to deny appellant's motion to suppress.

## II. TESTIMONY ON CHARACTER OF VICTIM

Appellant contends that it was error to allow the jury to hear testimony from Peter Soliotis, the victim's work supervisor, about the work habits, character and family life of the victim, Herman Helfand. Specifically, he complains of this exchange:

[By Mr. Hotham, for the state]

"Q. How old was Herman?

"A. Herman was in his last 50's.

"Q. And what type of worker was he?

"A. He was very conscientious.

"Q. What type of man?

"MR. SACKS: I'll object, Your Honor. I think that is not probative and serves no function other than to create sympathy for someone that is already deceased which we all agree with.

"THE COURT: Overruled.

Briefly, sir, just—

"THE WITNESS: Herman was a very likable person. He was family oriented, took his wife out to dinner, took her flowers whenever there was a sidewalk florist in the area, cared for his family and kids. He was a very, a beautiful person."

■ In determining relevancy and admissibility of evidence, the trial judge has considerable discretion. *State v. Starks,* 122 Ariz. 531, 534, 596 P.2d 366, 369 (1979). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 17A A.R.S. Rules of Evid., rule 401. "Evidence is relevant if it has any basis in reason to prove a material fact in issue." *State v. Kennedy,* 122 Ariz. 22, 26, 592 P.2d 1288, 1292 (App. 1979).

■ Under these well-established principles, it seems clear that witness Soliotis' testimony concerning the character of the deceased victim was irrelevant. Evidence which is not relevant is not admissible. 17A A.R.S. Rules of Evid., rule 402. Accordingly, we hold that it was error to overrule appellant's objection to the prosecutor's question.

Nevertheless, all errors do not require reversal because not all errors are unfairly prejudicial. "If it can be said that the error, beyond a reasonable doubt, had no influence on the verdict of the jury, then we will not reverse." *State v. McVay,* 127 Ariz. 450, 453, 622 P.2d 9, 12 (1980). Here, appellant confessed his guilt to at least one cellmate who testified at the trial. Smith was found in possession of the murder weapon and ammunition similar to the round that caused the fatal wound. Additionally, his palm print was found inside the store where the homicide occurred. On these facts, we find beyond a reasonable doubt that Mr. Soliotis' brief description of the victim's family life did not influence the verdict. Accordingly, we hold that the error was nonprejudicial.

### III. FORMS OF VERDICT

Appellant has urged that it was fundamental error for the trial court to present the jury with only two forms of verdict on the first degree homicide charge. The jury had the choice of finding Smith either guilty or not guilty of first degree murder. The indictment charged him with either premeditated murder or felony murder.

Smith contends that the forms of verdict presented to his jury denied the right to a unanimous jury verdict as guaranteed by Arizona Constitution, article 2, § 23, because the jurors could not vote on the question of his guilt as to either premeditated murder or felony murder. According to appellant, the defect in this procedure is that he could be convicted of first degree murder even though the jury could not unanimously agree on what kind of first degree murder he committed.

We have considered and rejected this line of reasoning in recent decisions, holding that an accused is not entitled to a unanimous verdict on the precise manner in which the crime was committed. *State v. Encinas,* 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982).

### IV. CRIME STATISTICS

Appellant contends further that it was fundamental error to allow the prosecutor, in closing argument, to present the jury with crime statistics which have no basis in the evidence. These are the remarks of which he complains:

> "There were over 125 people killed in our community last year. All of these deaths were very tragic, but none more senseless than this killing. In the United States alone last year, one person was killed every 20 minutes, 72 lives taken every day. And again last year, Phoenix was among the top ten in the most violent cities in America."

We agree that these statements constitute improper argument, because they allude to numerous facts not in evidence. *State v. Williams,* 107 Ariz. 262, 265, 485 P.2d 832, 835 (1971). Nevertheless, we do not believe this is reversible error. In the first place, we note that defense counsel made no objection to these remarks. Ordinarily, this failure to object precludes raising the purported error on appeal. *State v. Thomas,* 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981). By failing to make a timely, specific objection to the prosecutor's remarks, appellant waived this issue on appeal unless the error was fundamental.

In the past we have held fundamental error to be "such error as goes to the foundation of the case, or takes from the defendant a right essential to his defense". *State v. Gamble,* 111 Ariz. 25, 26, 523 P.2d 53, 54 (1974). We hold that this argument was error, but it did not rise to the level of fundamental error. Accordingly, and due to trial counsel's failure to object, the error has been waived and we decline to consider it further.

### V. CONSTITUTIONALITY OF THE DEATH PENALTY STATUTE

#### A. *No Jury Role in Imposition of Death Penalty*

Smith has advanced the argument that the procedure on sentencing set out in A.R.S. § 13–703 denied him his sixth and fourteenth amendment rights to a jury determination of the facts. He contends that in his case the death penalty was imposed after a factual determination, by the court alone, that this murder was committed for pecuniary gain. The defect in that procedure, in appellant's view, is that motive (whether the accused had an expectation of pecuniary gain) is a fact about the crime rather than about the defendant and, as such, is a fact that should be found by the jury.

We do not agree, and we believe that Smith's reliance on *State v. Quinn,* 50 Or. App. 383, 623 P.2d 630 (1981), is misplaced. Quinn was sentenced to die after a jury convicted him of murder. Because of a peculiar chronology of constitutional and statutory revisions, at the time of Quinn's conviction Oregon's murder statute did not distinguish between purposeful, deliberate, premeditated murder (first degree murder)

and purposeful murder committed without deliberation (second degree murder). Oregon's old criminal code had drawn that traditional distinction during that state's previous death penalty era (1920–1964). However, the Oregon criminal code had been revised in 1971 while there was no death penalty in Oregon so that there was a single form of murder in the code when Quinn was convicted.

When Oregon's voters, by a 1978 initiative and referendum, reinstated the death penalty, they did so by enacting the sentencing statute codified as Oregon Revised Statutes § 163.116.[1] Subsection (1) of ORS § 163.116 provided for a post-trial hearing procedure before the court. Subsection (2) listed the circumstances to be considered and which, if found affirmatively, required a death sentence under subsection (4).

One of the circumstances listed in ORS § 163.116(2) is the issue, in the words of the statute:

> "(a) Whether the conduct of the defendant that caused the death of the deceased was committed *deliberately* and with the reasonable expectation that death of the deceased or another would result;" (Emphasis added).

The Oregon Supreme Court held that the effect of the new sentencing statute was to reestablish a crime of deliberate first degree murder punishable by death. Because of this finding that deliberate murder was a different crime than murder, the court went on to hold that the procedure whereby the court, after the verdict, found a greater culpable mental state than the jury found and imposed an enhanced sentence had deprived Quinn of his right to a jury trial. Accordingly, the court set aside the death sentence and remanded for imposition of a new sentence.

Smith's case is distinguishable from Quinn's. In the case at bar, a jury, not the court, convicted the appellant of first degree murder and not the court. The court passed sentence on Smith after following the procedure set out in A.R.S.

§ 13–703. While the trial court made various findings of fact pursuant to the statute, including a finding that this homicide was committed for pecuniary gain, none of these findings were elements of the crime of which Smith stands convicted. This is the primary distinction between the Quinn case and appellant's.

Additionally, we have repeatedly rejected the argument that the sentencing procedure of A.R.S. § 13–703 violates a defendant's right to a trial by jury. *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1, 15 (1983). We decline to change that position because of the distinction between this case and *State v. Quinn, supra,* and, further, because of the continuing vitality of the authority upon which our earlier holdings are premised. *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

#### B. *Matters Offered in Mitigation*

Appellant argues that our death penalty statute violates the eighth and fourteenth amendments because it allows a judge to disregard factors which should be considered in mitigation. In a recent opinion of this court we made it clear that a sentencing judge is not free, as appellant contends, to disregard anything as a mitigating factor. In *State v. McMurtrey,* 664 P.2d 637 (1983) we explained: "The trial court is not required to find a mitigating circumstance; nor is it required to make a statement that none has been found. The trial court must, however, consider the evidence." (citation omitted). *Id.* at 646.

#### C. *Guidance in Balancing Aggravating and Mitigating Factors*

Smith has also argued that our death penalty statute violates the eighth and fourteenth amendments because it offers no guidance in balancing aggravating and mitigating circumstances. This contention has been considered and rejected by this court. *State v. Ortiz,* 131 Ariz. 195, 206, 639 P.2d 1020, 1031 (1982). Arizona Revised Statutes § 13–703 was drafted to guide the sentencing court's discretion and we contin-

---

1. ORS § 163.116 was repealed in 1981. 1981 Or.Laws, ch. 873 § 9.

ue to believe that goal is constitutionally achieved by the procedure used in appellant's case.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Pursuant to A.R.S. § 13–4035 we have reviewed the entire record for fundamental error. We therefore consider the question of whether Smith was denied effective assistance of counsel by virtue of his reliance on his trial counsel's advice (1) not to discuss the facts of these crimes with the presentence investigator and (2) not to present any mitigation evidence at the presentence hearing. We understand that the basis of this advice to Smith was counsel's belief that incriminating statements his client might make would later be admissible against him if he should win a new trial. It is clear that Smith received bad legal advice, since a defendant's statements made in connection with the preparation of the presentence report are not admissible at any new trial. 17 A.R.S. Rules of Criminal Procedure, rule 26.6(d)(2). It is also clear from the defendant's statements to the trial judge in open court, as well as the statement to the probation officer recorded in the presentence report, that Smith relied on this bad advice. We would expect that a man on trial for his life would rely on the advice of the person who defended him, and we believe that Smith's reliance was reasonable. However, two well-established points of law and two additional factual circumstances are material to this inquiry.

First, the legal standard by which we measure the effectiveness of counsel in a criminal trial is "whether under the circumstances the attorney showed at least minimal competence in representing the criminal defendant." *State v. Watson,* 134 Ariz. 1, 4, 653 P.2d 351, 354 (1982). Second, our death penalty statute requires the imposition of capital punishment when even one aggravating circumstance is proven, if no mitigating circumstance is found "sufficiently substantial to call for leniency." A.R.S. § 13–703(E).

The two additional facts are, first, that the state pleaded and proved aggravation under A.R.S. § 13–703(F)(2) (previous conviction of a felony involving the use or threat of violence). This was done with testimony and certified documentary evidence of a 1976 conviction for kidnapping in Tennessee. Imposition of the death penalty was thus assured unless the defendant bore his burden of showing mitigation sufficiently substantial to call for leniency. The second additional fact is that some information was offered in mitigation by avowals of defense counsel during his argument to the court; *i.e.,* the statements defendant said he would make about the events and the killing had he not believed that he would be compromising his fifth amendment privilege by offering his own statement as to mitigating circumstances.

It is our opinion that this convergence of legal and factual circumstances produced a presentence hearing at which defendant was denied effective assistance of counsel. First, by the time of the presentence hearing Smith's counsel knew from the state's sentencing memorandum that they proposed, and would be allowed, to prove the kidnapping conviction by testimony and documentary evidence. Presumably, counsel knew (1) that proof of a single aggravating factor, absent sufficient mitigation, mandates the death penalty, and (2) that rule 26.6(d)(2) protects the accused against self-incrimination. Nevertheless, and knowing of defendant's assertion that he did not intentionally shoot Herman Helfand, counsel advised Smith not to discuss the facts with the investigating probation officer. This insured that the result of the sentencing proceedings was a foregone conclusion, and that the result would be the worst possible outcome for his client.

We do not believe that advising a client incorrectly about the black letter Rules of Criminal Procedure, especially in a matter of life and death, can be called minimally competent representation. We hold, therefore, that the denial of Smith's right to effective assistance of counsel was fundamental error, taking from him a right essential to his defense. *State v. Gamble,*

*supra.* Further, we hold that the error was not harmless since it appears from the record that the sentencing court may not have considered circumstances that could have been weighed in mitigation. *State v. McMurtrey, supra.*

For that reason we remand for a new presentence investigation and hearing. The defendant will be given an opportunity to relate his version of the facts to the probation officer. It is, of course, for the sentencing judge to assess the credibility and sufficiency of that information. We remand because we believe that, in fairness, we must afford each person convicted of first degree murder the opportunity to meet his burden of establishing mitigation, assisted by minimally competent counsel.

## VII. AGGRAVATING AND MITIGATING CIRCUMSTANCES

Because we remand, we do not here review the trial court's findings as to aggravation and mitigation.

Likewise, because we are remanding this case to the trial court, this opinion does not contain the proportionality review required by our decision in *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41, *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1011 (1976). We will undertake these two tasks when we review the sentence after remand if a sentence of death is imposed.

Judgments of convictions are affirmed. Sentence on robbery count is affirmed. Sentence of death vacated on the conviction of first degree murder and the cause is remanded for resentencing in accordance with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.