685 P.2d 1284

**STATE of Arizona,
Appellee/Cross-Appellant,**

v.

**Lawrence K. LIBBERTON,
Appellant/Cross-Appellee.**

**No. 5701.**

Supreme Court of Arizona,
En Banc.

April 23, 1984.

134

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Jack Roberts and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee/cross-appellant.

James Hamilton Kemper, Phoenix, for appellant/cross-appellee.

HAYS, Justice.

Appellant, Lawrence Libberton, was convicted of first degree murder, A.R.S. § 13–1105, aggravated robbery, A.R.S. § 13–1903, kidnapping, A.R.S. § 13–1304, and theft, A.R.S. § 13–1802, all in connection with the same incident. Appellant was sentenced to death for the murder conviction. He was also sentenced to terms of imprisonment of 15 years for the aggravated robbery, 21 years for the kidnapping, to be served consecutively to the aggravated robbery sentence, and 5 years for the theft, to be served consecutively to the kidnapping sentence. The case was automatically appealed to this court. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 13–4031, and A.R.S. § 13–4035. We affirm.

In addition to our independent review of the aggravating and mitigating circumstances found by the sentencing judge, our proportionality review, and our review of the record for fundamental error, six issues confront us:

1. whether appellant was denied his right to a unanimous jury verdict because the jury was given only guilty and not guilty verdict forms for the murder charge even though appellant was charged alternatively with premeditated murder and felony murder;

2. whether appellant's death sentence is invalid because the sentencing judge did not find beyond a reasonable doubt that appellant killed, intended to kill or attempted to kill;

3. whether appellant was denied his right to trial by jury because Arizona's death penalty statute empowers the trial judge to find aggravating and mitigating circumstances;

4. whether Arizona's death penalty statute is unconstitutional because it fails to provide sentencing judges with guidelines on how to balance aggravating and mitigating circumstances;

5. whether the trial court committed fundamental error by admitting evidence of appellant's absence from a Department of Corrections work furlough program; and

6. whether the aggravating factor set forth in A.R.S. § 13-703(F)(7)—the defendant committed the offense while in the custody of the Department of Corrections—applies to appellant. (This issue was urged by the state on cross-appeal.)

In the early morning hours of November 17, 1981, the victim, Juan Maya, picked up a hitchhiker, Martin Norton. Norton, a 14-year-old, lived with a friend, Steven James, in a mobile home trailer located in Phoenix. Maya drove to the trailer and, according to Norton, made homosexual advances. Norton resisted and told Maya he should go in the trailer because there was a homosexual there who could satisfy Maya's desires. Maya entered the trailer, which was occupied at the time by James and the appellant, Libberton. Norton told James that Maya was gay and to get rid of him. James then kicked Maya in the crotch, and Maya left the trailer and ran. James and appellant pursued Maya and brought him back to the trailer. Norton testified that Maya's nose and mouth were bleeding when he was brought back to the trailer.

Once again in the trailer, Norton, James, and appellant took turns hitting Maya in the face. Maya pleaded with them to take his car and credit cards and quit hitting him. James had a gun in his hand and took

Maya's wallet. From the wallet, appellant obtained the title to Maya's car, and forced Maya to sign the title over to appellant. James took Maya's bracelet and ring. Appellant put on Maya's belt, which had Maya's name engraved on the back, and said, "[n]ow that I own Juan Maya's car I might as well be Juan Maya."

The three assailants then discussed, in Maya's presence, what to do with Maya. James said "[t]he only thing we can do is kill him." Appellant agreed. Next, James suggested the three could hide the body in a mine shaft on his parents' property in Salome. Appellant agreed, and at gunpoint forced Maya into Maya's car. Appellant kept the gun pointed at Maya all the way to Salome, approximately a two-hour drive from the trailer. On the way, James bought gas and cigarettes with one of Maya's credit cards. Later, along the highway to Salome, a police officer stopped the car for speeding. James, the driver, got out of the car and talked with the officer. Appellant threatened to shoot Maya if he said anything. James got back in the car and the group proceeded to Salome.

The group arrived at James' parents' property shortly before daybreak. Appellant handed the gun to James who ordered Maya to walk up the side of a small mountain to the mine shaft. Maya requested and was allowed to smoke a cigarette. The assailants stood by Maya, allowing him to finish his cigarette, before beginning the final assault. When Maya finished his cigarette, James ordered Maya to step to the shaft, a hole about five feet in diameter with a beam across the top. Maya screamed "[d]on't kill me." James fired at Maya twice from less than five feet. (Only sparks and no bullets came out of the gun because, as established at trial, the gun was filled with debris.) Maya ran at James, grabbed the gun, struggled with James, and fell to the ground. Appellant grabbed a five-pound rock and began beating Maya on the back of the head and shoulders with it. Maya was still struggling with James for the gun. Norton handed appellant a board, with which appellant struck Maya on the back, forcing

Maya to let go of the gun. James then shot in the direction of Maya's head. As before, only sparks came out of the gun. Maya was still conscious, making "gurgling sounds," and moaning. Appellant grabbed the gun from James and fired it at Maya's head. Again, the gun malfunctioned. Maya was still not dead, so all three assailants picked up large rocks and slammed them on the back of Maya's head as Maya lay face down. After about five blows Maya lay unconscious. Appellant and James dragged Maya to the mine shaft and threw him in.

Back in the car appellant and James told Norton that if he told anyone they would kill him. The three then returned to Phoenix. James told Norton to clean the trailer and remove Maya's blood from the couch. That morning appellant and James picked up a David McIntosh in Maya's car. The three assailants and McIntosh drove around. Appellant bought some shoes with one of Maya's credit cards. At noon the three assailants were captured when appellant attempted to get a cash advance of $20 on Maya's MasterCard.

## I. FORM OF VERDICT

■ Appellant argues that he was denied his right to a unanimous jury verdict as guaranteed by Ariz. Const. art. 2, § 23 because he was charged alternatively with premeditated murder and felony murder but the jury was given verdict forms only of "guilty of first degree murder" and "not guilty of first degree murder." In *State v. Encinas*, 132 Ariz. 493, 496–97, 647 P.2d 624, 627–28 (1982), we decided this issue contrary to appellant's position. We have affirmed our position since then, *see State v. Berndt*, 138 Ariz. 41, 45, 672 P.2d 1311, 1315 (1983); *State v. Smith*, 136 Ariz. 273, 277, 665 P.2d 995, 999 (1983), and continue to do so today.

## II. *ENMUND* FACTORS

■ Appellant claims that his death sentence is invalid because the sentencing

judge did not, in compliance with *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and as adopted by this court in *State v. McDaniel*, 136 Ariz. 188, 199, 665 P.2d 70, 81 (1983), determine beyond a reasonable doubt that appellant killed, attempted to kill, or intended to kill. Because appellant was sentenced before we decided *McDaniel*, the trial court did not have the benefit of that case when pronouncing sentence. Similarly, the trial court in *McDaniel* sentenced the defendant before we adopted *Enmund*. Nevertheless, in *McDaniel* we reviewed the record and independently concluded that the defendant had in fact killed the victim. As in *McDaniel*, in the present case the record establishes beyond a reasonable doubt that *Enmund* is satisfied.

In finding that the mitigating circumstance listed in A.R.S. § 13–703(G)(3)[1] did not exist, the sentencing judge stated that "[t]he defendant was one of the individuals who actually committed the offense and was not found guilty by reason of being legally accountable for the conduct of another person ...." Appellant correctly points out that this finding was not made beyond a reasonable doubt.

After reviewing the record we agree with the trial court that appellant's participation in the murder was not minor. Rather, appellant actively participated in the murder. At the trailer appellant agreed with James that the only thing to do was to kill Maya. Appellant also agreed to hide Maya's body in the mine shaft. Appellant pointed a gun at Maya during the trip to Salome, and when the police officer stopped the car, appellant threatened to shoot Maya if he said anything. At the mine shaft, while Maya was struggling with James, appellant struck Maya first with a rock and then with a board. As Maya lay still on the ground, appellant pointed and fired a gun at Maya's head from close range. Appellant then slammed

---

**1.** This mitigating circumstance provides: "The defendant was legally accountable for the conduct of another under the provisions of § 13–

303, but his participation was relatively minor, although not so minor as to constitute a defense to prosecution.

large rocks onto Maya's head. Finally, appellant helped throw Maya into the mine shaft. These facts establish beyond a reasonable doubt that appellant intended to kill Juan Maya.

## III. RIGHT TO JURY

■ Appellant urges that he was denied his right to trial by jury because Arizona's death penalty statute unconstitutionally empowers the trial judge to find aggravating and mitigating factors. *See* A.R.S. § 13–703. We have rejected this contention and continue to do so. *See, e.g., State v. Jordan,* 137 Ariz. 504, 506, 672 P.2d 169, 171 (1983).

## IV. SENTENCING GUIDANCE

■ Appellant asserts that Arizona's death penalty statute is unconstitutional because it fails to provide trial judges with guidance on how to balance aggravating and mitigating factors. We rejected this contention in *State v. Gretzler,* 135 Ariz. 42, 53–56, 659 P.2d 1, 12–15, *cert. denied,* — U.S. ——, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

## V. EVIDENCE OF PRIOR CONVICTIONS

At the time of the incident at issue the appellant was an escapee from a Department of Corrections work furlough program. Appellant points to four references made at trial about his escape from the work furlough program. Appellant argues that an accused's prior felony convictions cannot be used as evidence against him except to impeach his testimony if he testifies, and that although it was not explicitly stated at trial that appellant had prior felony convictions, the references to the escape from the work furlough program essentially informed the jury of those prior felonies.

■ We agree with appellant that the references to his escape from the work furlough program informed the jury that appellant had prior felony convictions. We note, however, that prior felony convictions can be used against a defendant in more ways than that suggested by appellant.

We agree with the state that evidence of prior felony convictions can also be used to prove motive. *See, e.g., State v. Mincey,* 130 Ariz. 389, 404, 636 P.2d 637, 652 (1981), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982); *State v. Ferguson,* 120 Ariz. 345, 347, 586 P.2d 190, 192 (1978); Rules of Evidence, rule 404(b).

■ In *Ferguson* we found that the defendant had committed the robberies in question to obtain money and a vehicle to complete his escape from custody. We concluded that the exigencies of escape constituted the motive for the robberies. A similar situation exists in the present case. The first reference to the work furlough program was made when the arresting officer, a Detective Neuss, testified. Neuss testified that appellant said he obtained the victim's car from friends he did not want to name. The following colloquy between the state's counsel and Neuss then took place.

Q Did he tell you why he wanted that car?

A Yes.

Q What did he tell you?

A He told us that he wanted the car so that he could get out of the state.

Q Why?

A Because he was a walk-away from the work furlough program with the Department of Corrections.

The second reference was made during the state's direct examination of Daniel McIntosh, the appellant's friend who the assailants picked up in Maya's car a few hours after the crime.

Q Had you made plans with Larry Libberton?

A Yeah, we were going to leave town that night.

Q Where were you going?

A I don't know exactly.

Q Why were you leaving town?

A Just to get away from Arizona.

Q Did Mr. Libberton tell you why he was leaving town?

A Because he had escaped from the Durango facility.

Q What were you going to take, what type of transportation?

A The car.

Q Which car?

A The Thunderbird. [The victim's car.]

Both of these discussions demonstrate a motive for the crimes charged: the appellant wanted the car so he could leave Arizona to evade capture from his escape from a work furlough program; he wanted money to facilitate his flight from Arizona authorities; and he then killed the victim to hinder detection of the theft of Maya's car and wallet. Both of these allusions to appellant's prior convictions were admissible to show motive.

■■ The third reference to prior felonies was brought out by defense counsel on cross-examination of McIntosh:

Q You also indicated that you decided to leave town with Larry; is that right?

A Yes.

Q He really didn't escape, he walked off a work furlough program?

A He just didn't return.

Q He had been housed over at Durango; isn't that right?

A Yes, sir.

Because defense counsel elicited this testimony, the admission of it must be fundamental error before we will grant relief to appellant. *Cf. State v. Smith,* 136 Ariz. 273, 277, 665 P.2d 995, 999 (1983) (failure to object to prosecutor's remarks waived issue on appeal absent fundamental error). We have described fundamental error as error going to the foundation of the case or that which takes from the defendant a right essential to his defense, *State v. Gamble,* 111 Ariz. 25, 26, 523 P.2d 53, 54 (1974), and as error of such magnitude that the defendant could not possibly have had a fair trial, *State v. Smith,* 114 Ariz. 415, 420, 561 P.2d 739, 744 (1977). Because evidence of appellant's escape from the work furlough was already properly in evidence, we fail to comprehend how admission of the same evidence in the present context was error going to the foundation of the case, or error taking from the defendant a right essential to his defense, or error of such magnitude that appellant did not have a fair trial.

■ The final reference to prior convictions occurred during the state's closing argument:

He [McIntosh] told you that [during the morning after the murder] he went back over to the trailer and Lawrence Libberton had changed his clothes and he thought those were awfully nice clothes, and he knew that he hadn't gone home, because he knew that he was AWOL from the work furlough program, and he knew that they would be looking for him at his house....

Because the statement was not objected to, the admission of it must be fundamental error before we will grant relief to appellant. *State v. Smith, supra,* 136 Ariz. at 277, 665 P.2d at 999. For the same reason we did not grant relief for the third allusion to prior felonies—there was no fundamental error—we will not grant relief because of this allusion to appellant's absence from the work furlough program.

## VI. CUSTODY AS AN AGGRAVATING FACTOR

■ The state urges by cross-appeal that the aggravating factor set forth in A.R.S. § 13–703(F)(7)—that the defendant committed the offense while in the custody of the Department of Corrections—applies to appellant. The state recognizes that this court in *State v. Gillies,* 135 Ariz. 500, 512, 662 P.2d 1007, 1019 (1983), held that this aggravating circumstance does not apply to persons on unsecured work furlough. The state distinguishes *Gillies* by saying that in this case appellant was on secured work furlough (he was required to return to the Durango facility each day at 6:00 p.m.) whereas the defendant in *Gillies* was on unsecured work furlough.

In *Gillies* we stated that the legislature's purpose for enacting A.R.S. § 13–703(F)(7) is "to protect the guards and other inmates at such institutions where a defendant is

confined and to discourage violence by incarcerated persons." 135 Ariz. at 512, 662 P.2d at 1019. Appellant was not confined when he committed the offense, nor was he incarcerated. Section 13–703(F)(7) does not apply to him.

## VII. INDEPENDENT REVIEW OF AGGRAVATING AND MITIGATING FACTORS

■ At sentencing, the court found two aggravating circumstances and no mitigating circumstances sufficiently substantial to call for leniency, and then sentenced appellant to death. Pursuant to *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41, *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1976), we independently review the record to determine the existence or absence of aggravating and mitigating circumstances, and determine whether the death penalty should be imposed.

■ The first aggravating circumstance found by the sentencing court was that the offense was committed in the expectation of the receipt of something of pecuniary value. A.R.S. § 13–703(F)(5). Pecuniary consideration must be a cause of the murder, not merely a result. *E.g., State v. Gillies*, 135 Ariz. 500, 512, 662 P.2d 1007, 1019 (1983). In the instant case, we have already concluded that the appellant wanted Maya's car so he (appellant) could leave Arizona to evade capture from his escape from the work furlough program, that appellant wanted money to facilitate his flight from Arizona authorities, and that appellant then killed Maya to hinder detection of the theft of Maya's car and wallet. We agree with the sentencing court that a cause for the murder was pecuniary gain. *See State v. Gretzler*, 135 Ariz. 42, 50, 659 P.2d 1, 9, *cert. denied*, —— U.S. ——, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) (defendants committed the murders "to obtain a substitute car in which they could continue their flight"); *State v. Tison*, 129 Ariz. 546, 555, 633 P.2d 355, 364 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147, (1982) (homicides were committed to secure a vehicle in which assailants could continue their flight); *State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 96, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980) (defendant killed and then took victims' credit cards, money, rings, and car; court concluded that "[t]he circumstances surrounding the total episode reflect that the expectation of financial gain was a cause of the murders.").

■ The second aggravating circumstance found by the sentencing court was that the murder was committed in an especially heinous, cruel or depraved manner. A.R.S. § 13–703(F)(6). Because the statutory expression is in the disjunctive, a finding of only one of these factors is necessary to constitute this aggravating circumstance. *E.g. Clark, supra*, 126 Ariz. at 436, 616 P.2d at 96. Heinous and depraved refer to the perpetrator's mental state whereas cruelty involves mental and physical pain suffered by the victim. *Id.*

■ It is clear that the murder in the instant case was committed in a cruel manner. The victim suffered great mental anguish. "Evidence of the mental anguish of a victim, resulting from such factors as being held captive for an extended period, uncertain as to his ultimate fate, is relevant to establish cruelty." *State v. Gillies, supra*, 135 Ariz. at 513, 662 P.2d at 1020. The victim in the present case heard the assailants discuss killing him, and even where to hide the body. Maya was forced into his own car and held at gunpoint during the two-hour drive to Salome, a place he knew the assailants had chosen to commit the murder. The assaults on Maya began within a couple of hours after midnight, and Maya was not killed until almost daybreak. Thus, Maya was held captive, uncertain as to his ultimate fate, for several hours before the killing. At the mine shaft, Maya requested and was allowed to smoke one last cigarette before his execution. Therefore, even after arriving at the place chosen for the murder, Maya was subjected to the additional torment of being allowed to delay the inevitable by smoking his final cigarette while his assailants stood by, delaying their final assault

until he finished. Finally, Maya pleaded for his life. We find that these facts beyond any reasonable doubt establish mental cruelty.

■ In addition to mental cruelty, Maya was physically abused. He was beaten in the trailer, outside the trailer after he attempted to flee the assailants, and in the trailer again after his assailants pursued and caught him. In Salome, Maya, while conscious, was beaten with rocks, a board, and then with more rocks. The appellant inflicted physical pain upon Maya. We agree with the sentencing court that the aggravating circumstance "heinous, cruel or depraved" exists in this case.

■ The appellant urged several non-statutory mitigating circumstances: that he is a follower and merely followed the lead of James in committing the murder, that he had been promised but was never given psychological care while in custody previously, that he was young (20 years) at the time of the crime, that he has no previous record of violence, and that he would not have had a juvenile record were it not for his own father filing charges against him.

In response, we first note that from the beginning the appellant actively participated in the crime, and even pointed the gun at Maya on the way to Salome. Second, there is no evidence that appellant's ability to appreciate the wrongfulness of his acts was substantially impaired. Third, the sentencing court specifically found that appellant's age was not a mitigating factor. Considering the deliberation involved in the crime, and the duration of the crime, we agree that the appellant's age is not a sufficient factor to call for leniency. · See Gillies, supra, 135 Ariz. at 513, 662 P.2d at 1020. Finally, we agree with the trial court that all of appellant's claimed mitigating circumstances, considered as a whole, are not sufficiently substantial to call for leniency.

## VIII. PROPORTIONALITY REVIEW

■ Finally, this court conducts a proportionality review to determine "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Richmond, supra, 114 Ariz. at 196, 560 P.2d at 51. We consider not only cases where the death penalty was affirmed but also cases where the death penalty was reduced to a sentence of life imprisonment. State v. McCall, 677 P.2d 920 at 935–936.

■ In State v. McDaniel, 136 Ariz. 188, 665 P.2d 70 (1983), the defendant and accomplices beat the victim, tied him up, poured liquor down his throat, gagged him, wrapped him in a blanket, and then locked him in the trunk of his own car. The victim was found two days later, dead from suffocation or heat exhaustion. We reduced the death sentence to life imprisonment because we found as a sufficiently substantial mitigating circumstance significant evidence that defendant and his accomplices did not intend to kill the victim.

We find the instant case is more analogous to cases such as State v. Gillies, supra. In Gillies the defendant and his accomplice robbed and raped the victim, then drove her to the Superstition Mountains where they threw her off a forty-foot cliff. When the assailants found her still alive, they beat her with rocks and then buried her with more rocks; she died 10–15 minutes after being buried. We upheld the death sentence, despite the defendant's young age, upon finding that the killing was committed in a cruel manner. We have reviewed other cases, such as State v. Adamson, 136 Ariz. 250, 665 P.2d 972, cert. denied, —— U.S. ——, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983) (despite existence of mitigating factors, death penalty affirmed upon finding that the killing was done for pecuniary gain and in a cruel manner), and State v. Bishop, 127 Ariz. 531, 622 P.2d 478 (1980) (despite below average intelligence and lack of prior criminal record of defendant, death penalty affirmed upon finding that the killing was committed in heinous and depraved manner). We find that the imposition of the death penalty in this case

is not disproportionate to the penalty imposed in similar cases. We conclude that the imposition of the death penalty in this case is justified.

As required by A.R.S. § 13–4035, we have reviewed the record for fundamental error. Having found none, the judgments of conviction and sentences are affirmed.

HOLOHAN, C.J., and GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.