NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

TOMMIE WARD, *Petitioner/Appellant*,

*v.*

SHANNA WARD, *Respondent/Appellee*.

No. 1 CA-CV 18-0551 FC
FILED 7-11-2019

Appeal from the Superior Court in Maricopa County
No. FC2013-051291
The Honorable Jennifer C. Ryan-Touhill, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Tommie Ward, Surprise
*Petitioner/Appellant*

Shanna Ward, Black Canyon City
*Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Diane M. Johnsen joined.

---

**W I N T H R O P**, Judge:

**¶1**         Tommie Ward ("Father") appeals the superior court's 2018 order modifying parenting time, legal decision-making, and child support for Father's two children with Shanna Ward ("Mother"). Father also appeals the court's award of attorneys' fees in favor of Mother. For the following reasons, we vacate the child support award and remand for further proceedings consistent with this decision. We affirm on all other issues.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**         Father and Mother married in 2004 and have two children, T.W. (born in 2004) and S.W. (born in 2008). After Father filed for dissolution, the superior court issued a divorce decree in July 2013. In the decree, the court granted equal parenting time and joint legal decision-making authority and ordered Father to pay Mother spousal maintenance and child support. Shortly after the divorce, Father moved approximately forty-five minutes away from the children and Mother.

**¶3**         Father and Mother had trouble adhering to the parenting plan and disagreed over T.W.'s need for counseling, the children's schooling, and other issues. The court appointed a parenting coordinator pursuant to Arizona Rule of Family Law Procedure ("ARFLP") 74 to assist in resolving the issues. The parenting coordinator issued a series of reports outlining the parties' disagreements and made recommendations for resolving the issues. Even after receiving these recommendations, the parties continued to have disputes. Conciliation services also did not resolve the disputes.

**¶4**         In October 2017, Mother petitioned the court to modify parenting time, legal decision-making, and child support. Mother sought:

---

[1]      "We view the evidence in the light most favorable to upholding the trial court's decision." *Baker v. Meyer*, 237 Ariz. 112, 113, ¶ 2 (App. 2015).

(1) primary physical custody of the children; (2) sole legal decision-making authority; and (3) an increase in monthly child support. As "material changes affecting the welfare of the children," Mother identified the children having different school schedules, T.W.'s need for mental health counseling, the parties' disagreement on disciplinary matters, and Father's general unwillingness to co-parent.[2] Father then petitioned for T.W. to live with him full-time and S.W. part-time.

¶5            Before setting a hearing on the petition, the court required the parties to attend a resolution management conference. A court conciliator interviewed the parties and both children and issued a report outlining his findings as to the best interests of the children pursuant to Arizona Revised Statutes ("A.R.S.") section 25-403.

¶6            In July 2018, the court held an evidentiary hearing. Father represented himself and Mother was represented by counsel. At the outset of the hearing, Mother's counsel objected to Father calling his adult son as a witness. Mother's counsel argued that the witness was untimely and improperly disclosed. After hearing Father's argument regarding the relevance of his adult son's testimony, the court sustained Mother's objection. Mother and Father were the only two witnesses that testified at the hearing.

¶7            Mother testified that modification of legal decision-making and parenting time was in the best interests of the children because she and Father could not agree on any issues. She stated that Father's request to divide the children's parenting time so that T.W. lived primarily with him and S.W. lived primarily with her "doesn't make sense" for the children and "would be very strange for them." She asserted that Father refused to address the children's school and medical issues and would not discipline the children. She explained that the current parenting plan was unworkable because the children were on different school schedules for the first time, and Father also refused to let the children participate in extracurricular activities. In addressing allegations Father made in his pretrial statement, Mother denied having a substance abuse problem or hitting T.W.; she instead suggested that Father encouraged T.W. to lie in his interview with the conciliator.

---

[2]      Mother also argued that the time required for Father to pay spousal maintenance had ended, which also necessitated a change in child support.

¶8          On cross-examination, Father questioned Mother about the accuracy of the gross income she reported to the court.  Mother conceded that she received $332 a month per child as Social Security benefits due to her fibromyalgia.  Mother stated she did not include the payments in her gross monthly income because each payment "actually has [the children's] name on it."  On redirect, Mother conceded that she should have listed the children's benefits in her gross income, but she asserted that she disclosed and accounted for the payments in the child support section of her financial affidavit to the court.

¶9          Father then testified.  After Father began reading from his notes, the court stated that the written presentation sounded like what was already in Father's pretrial statement, which the court had already read; as such, the written statement would be cumulative.  The court instead offered to ask Father a series of questions to clarify and supplement the information in the pretrial statement.  Father testified that he believed his son needed to reside with him because "[h]e's going through puberty and there are issues there that a father knows best how to deal with instead of the mother."  He also stated he believed the children were doing fine in school, but T.W. would be better suited going to a school near Father.  He asserted that T.W. never showed signs of any mental health issues when at his house.  Father testified T.W. told him that Mother hit T.W. in the mouth and threw objects at him.  Father further alleged that Mother has a drinking problem and abuses prescription drugs and marijuana.  He testified that his children told him Mother abused substances.

¶10         On cross-examination, Mother's counsel questioned Father about the accuracy of his reported income and the payments made for the children's health insurance.  Father conceded that he had not disclosed all the tax returns Mother had requested.

¶11         The court took the matter under advisement and issued a written decision on August 7, 2018.  The court granted Mother's petition.  Specifically, the court ordered: (1) Mother have sole legal decision-making authority over the children; (2) Mother have primary physical custody of the children; and (3) Father to pay Mother $1,113 per month in child support.  The court also ordered Father to pay Mother's attorneys' fees, finding that Father acted unreasonably throughout the litigation and his

financial resources greatly outweighed Mother's. Father timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) (2019).[3]

**ANALYSIS**

*I.      Due Process*

**¶12**        Father argues the superior court violated his due process rights by waiting until after the hearing to weigh the credibility of the conciliator's report, refusing to let his adult son testify as a witness, and refusing to let him read from his notes while testifying. We review questions of due process *de novo*. *See Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207, ¶ 6 (App. 2016). "Due process requires the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* ¶ 7 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

*A.      The Conciliator's Report*

**¶13**        Father argues the court violated his due process rights by failing to assess the credibility of the conciliator's report before the evidentiary hearing. T.W. stated in his interview with the conciliator that Mother hit him often. Father asserts that if the court would have told him the statements made by T.W. lacked credibility, Father would have offered additional evidence to support T.W.'s statements that Mother physically abused him. He maintains that if the court was not inclined to accept without reservation the conciliator's report and recommendations, it was required to inform the parties before the hearing.

**¶14**        Father has shown no authority requiring the court to make credibility findings before the close of evidence, and the law is to the contrary.[4] *See* ARFLP 82(a)(1) ("If requested before trial, the court must make separate findings of fact and conclusions of law. The findings and conclusions may be stated orally on the record *after the close of the evidence* or may appear in an opinion, minute entry, or memorandum of decision

---

[3]        We cite to the current version of the statute(s) when no revisions material to this decision have occurred.

[4]        Although Father cites to passages from the Arizona Family Law Rules Handbook as legal authority for his position, the portion he quotes relates to ARFLP 73, which does not address conciliation services. Moreover, this secondary source is not precedential, and the applicable ARFLP does not support Father's position. *See* ARFLP 82(a)(1).

filed by the court.") (emphasis added). Father questions the court's finding that T.W.'s claims of abuse were "not credible." The court did not hear T.W. testify, so it could not have found the child not credible as a general matter. But, the court did not solely rely on T.W.'s statements when it determined no evidence supported his claims of abuse.

¶15        Father and Mother each testified about the allegations of abuse and inappropriate behavior by Mother, and the court advised the parties that it would review the conciliator's report. The court concluded in its under advisement ruling that Father's own inconsistent statements about the existence of abuse and the absence of any reports to the police or the Department of Child Safety ("DCS") all favored a finding that no credible evidence supported the allegations. The superior court was in the best position to determine the credibility of Mother and Father as witnesses and give appropriate weight to the conciliator's report, and we find no abuse of that discretion. If Father had additional evidence to corroborate T.W.'s reported statements, he should have offered that evidence at the hearing.

### B.        Father's Adult Son as a Witness

¶16        Next, Father argues the court violated his due process rights by precluding his adult son, a child from a prior relationship, from testifying. A trial court has considerable discretion in determining the relevance and admissibility of evidence, *State v. Smith*, 136 Ariz. 273, 276 (1983), and may exclude irrelevant or duplicative evidence, Ariz. R. Evid. 402, 403.

¶17        Father asserts his adult son's testimony would have been relevant to "make significant connections of the inappropriate exposure [the adult son] experienced [with Mother], and how he believes the same building blocks are being built around [T.W.] as they were [with] him." Mother counters that Father's son left Arizona in 2008 and did not return until after the parties had separated in early 2013, and that the adult son had no factual basis to testify about the current relationship between Mother and T.W.

¶18        After Mother objected to having the son testify, the court asked Father to respond. Father stated only that his son "can assist this Court in finding insight into any issues which might be addressed in this

action." The court then sustained the objection.[5] Father's pretrial statement explained his position on Mother's alleged conduct and his suggestions that Mother had an inappropriate relationship with T.W., and the court assured Father it would consider his pretrial statement in making its ruling. Further, Father had the opportunity during the hearing to additionally address each contested issue. As such, the court acted within its discretion when it weighed the relevancy of the adult son's potential testimony and ultimately precluded him from testifying. On this record, we see no abuse of discretion or due process violation. *See Smith*, 136 Ariz. at 276.

### C. Father's Testimony

**¶19** Finally, Father argues the court violated his due process rights by refusing to allow him to read from his notes during the presentation of evidence. Mother asserts the court did not violate Father's rights because he attempted to read "a self-authored speech from his attorney chair, when he would have taken the stand if he had an attorney."

**¶20** "[A] trial court has broad discretion over the management of a trial, and although it may place [] limitations on trial proceedings, any limitations must be reasonable under the circumstances." *Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 13 (App. 2010) (internal citation omitted). This includes excluding evidence that the court deems cumulative or a waste of time. Ariz. R. Evid. 403. Although courts may use their discretion in conducting court proceedings to account for pro se litigants, they retain the power to effectively manage a court proceeding. *See id.*; Ariz. R. Evid. 611(a)(1) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth.").

---

[5]     Mother originally objected to the adult son as a witness in her pretrial statement, arguing the witness was untimely and improperly disclosed. After hearing Father's argument on the relevancy of his son's testimony, the court precluded the testimony without clarifying on what basis it ruled. Even so, the record confirms Father disclosed the witness a day late and the disclosure failed to provide the required summary of the witness' anticipated testimony. *Johnson v. Provoyeur*, 245 Ariz. 239, 241-42, ¶ 8 (App. 2018) ("The superior court has broad discretion in ruling on disclosure and discovery matters, and this court will not disturb an evidentiary ruling absent a clear abuse of discretion and resulting prejudice.").

¶21       At the hearing, after Father was sworn-in, he attempted to read notes from a legal pad as part of his testimony. After Father read only two sentences, the court stated that his pre-written presentation sounded like what was already in his pretrial statement, and the court did not want or need cumulative information. The court instead offered to ask Father questions in order to elicit his testimony. Father agreed, and after it completed its questioning, the court gave him multiple opportunities to offer any further thoughts he wanted to express. Father reiterated that he "love[d] and care[d] for [his] children," and stated he had repeatedly attempted to mediate the children's issues with Mother, but Mother failed to cooperate. He also stated that he did not feel Mother acted in good faith and asked the court to deny her request for attorneys' fees.

¶22       We conclude the court's questionable restriction on Father's narrative testimony ultimately did not impede Father's ability to present his position. Although Father was not permitted to proceed in the manner he may have preferred, the record confirms he was not prejudiced by the ruling because he had a meaningful opportunity to be heard on all the relevant issues. *See Mathews*, 424 U.S. at 333.

## II.       *Modification of Legal Decision-Making and Parenting Time*

¶23       Father argues the court erred in finding it was in the best interests of the children to modify legal decision-making and parenting time. The superior court has broad discretion in determining what is in a child's best interests, and we review an order modifying legal decision-making authority and parenting time for an abuse of that discretion. *Baker*, 237 Ariz. at 116, ¶ 10; *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7 (App. 2003). The court abuses its discretion "when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support [it]." *Savord v. Morton*, 235 Ariz. 256, 259, ¶ 10 (App. 2014) (internal citation and quotation omitted). We will not reweigh the evidence, and we will affirm if substantial evidence supports the court's ruling. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

### A.       *Legal Decision-Making*

¶24       Mother requested sole legal decision-making authority based on her assertion that Father refused to address the children's school and medical needs. Father wanted sole legal decision-making authority for T.W. and asserted there was no need to change the joint legal decision-making for S.W. The court determined the best interests of the children

required Mother to have sole legal decision-making authority over both children.

¶25        After reviewing the testimony and other evidence presented by Mother and Father and considering the factors in A.R.S. § 25-403(B), the court found that Mother's denials of Father's allegations of domestic abuse were credible because Father had given conflicting statements about whether any abuse occurred and there were no police reports or DCS documents to corroborate the allegations.  Additionally, the court found that T.W. "would benefit from counseling and Father's refusal to agree to this service and repeatedly blame Mother for all problems facing the child(ren) is unreasonable and detrimental to the minor children."  The court's analysis of the best interests of the children was supported by substantial evidence, and Father has shown no abuse of discretion.

            B.        *Parenting Time*

¶26        Mother petitioned to be the primary custodial parent for both children and to change the parenting schedule for the children's school vacation; Father argued he should have primary custody of T.W., joint custody of S.W., and alternating weekends with both children.  The court ultimately awarded Mother primary custody of the children, and Father was awarded alternating weekends, after school one day a week and a rotating holiday and vacation schedule.

¶27        The court considered the relevant factors identified in A.R.S. § 25-403(A) and found the best interests of the children would be to modify the prior parenting plan.  The court noted that Father had moved approximately forty-five minutes away from the children after the divorce, and, under the existing parenting plan, the children were spending a significant amount of time commuting between the parents' homes. Further, the record shows that S.W. reported feeling tired because she had to get up early to commute from Father's house to school, and Mother testified the children were missing out on extracurricular activities because Father was not willing to drive them back and forth from his home.  The court determined a change in the parenting plan would "maximize[] each parent's parenting time to the extent it is in the children's best interests." Substantial evidence in the record supports the court's determination, and we will not disturb the decision on appeal.

        III.    *Child Support*

¶28        Father contends the court abused its discretion in determining Mother's gross income when calculating child support.  Specifically, he

argues that the court erred by not considering $664 per month that Mother receives in Social Security disability benefits on behalf of the children. Mother argues the benefits are resources for the children and are not "designed to supplement existing resources and are not intended to displace the obligation of the parent to support his or her children." She further argues that Father never disclosed his W-2 statements for his current employment or proof of medical insurance for the children. She asserts that the superior court therefore "made the best possible decision, given what the court had to work with."

¶29        Whether the court should have included other amounts in calculating Mother's gross monthly income is a question of law we review *de novo*. *Patterson v. Patterson*, 226 Ariz. 356, 358, ¶ 4 (App. 2011). In determining whether the court abused its discretion, we consider whether it made an error of law in reaching its discretionary conclusion. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455-56 (1982). Gross income is considered differently in calculating child support than for tax purposes, and, for purposes of child support, it includes all money the household receives and can spend. *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 8 (App. 2010) (citing *Cummings v. Cummings*, 182 Ariz. 383, 385 (App. 1994)).

¶30        At the hearing, Mother admitted that she began receiving $664 in monthly Social Security disability benefits—$332 per child—shortly after the parties divorced in 2013. Mother testified the payments were earmarked for the children, and she did not pay taxes on these benefits; accordingly, she did not believe these funds were reportable income to her, but rather a source of child support that she reported as such on her affidavit of financial information. In her answering brief, Mother maintains that she did not intentionally try to hide the fact that the children received the Social Security benefits.

¶31        Mother's bank statements show she receives three direct deposits from Social Security each month: one for $1,221 (for Mother's disability benefits) and two for $332—totaling $1,885. Mother concedes the two $332 deposits are for the benefit of the children. On Mother's April 2017 affidavit of financial information, she listed her gross monthly income as $1,325.90. Contrary to her testimony, Mother did not list the $664 as an alternative source of income or as a source of child support, and she did not account for those funds anywhere else on her affidavit. Although the court stated at the hearing that it would review the additional Social Security payments when calculating Father's child support obligation, the court's child support worksheet lists Mother's income as $1,325.90, not $1,885. The

court then calculated Father's child support obligation based on this income.

¶32 We agree with Father that the court erred when it failed to include the children's Social Security benefits when it calculated Mother's gross income. Our review of the record confirms that those funds were received by the household each month via direct deposit to Mother's bank account and thereby became available for expenditures—satisfying the definition of "gross income" as defined by the child support guidelines. *See* A.R.S. § 25-320 app. § 5(A) ("Gross income includes income from any source, and may include, but is not limited to, income from . . . social security benefits (subject to Section 26), worker's compensation benefits, unemployment insurance benefits, [and] disability insurance benefits."); *see also Clay v. Clay*, 208 Ariz. 200, 202, ¶ 7 (App. 2004) (explaining states like Arizona that have adopted the "Income Shares Model" for calculating child support benefits consider dependency benefits issued to the child of the disabled parent as earnings derived by the disabled parent from the parent's past Social Security contributions).

¶33 We therefore vacate the portion of the order dealing with child support and remand the issue for further proceedings. On remand, the court may order an additional evidentiary hearing and/or require Mother to provide additional information concerning the disability benefits so that the court may accurately use Mother's gross income in calculating the appropriate child support order.

IV. *Attorneys' Fees*

¶34 Father argues the court erred in awarding Mother attorneys' fees and costs. Father does not dispute that there is a disparity in the parties' financial resources but contends he did not act unreasonably or in bad faith. We review the award of attorneys' fees for an abuse of discretion. *See In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008).

¶35 Section 25-324(A) authorizes the court to award attorneys' fees after considering the parties' financial resources and the reasonableness of their positions. An award of attorneys' fees may be supported on either basis. Here, the court found Father's income far outweighs Mother's and the positions he took were unreasonable. Specifically, the court found Father failed "to demonstrate appropriate and good faith compliance with discovery requests and by arguing no basis existed to modify child support." The record shows Father also failed to disclose accurate proof of employment throughout the proceedings.

Additionally, the employment information that was presented to the court showed Father's income greatly outweighed Mother's income. Because reasonable evidence supports the court's findings, the court did not abuse its discretion in awarding fees to Mother.

## CONCLUSION

**¶36** For the foregoing reasons, we affirm the superior court's order in part but vacate and remand the issue of child support to be calculated consistent with A.R.S. § 25-320 and the child support guidelines.

