728 P.2d 232

**STATE of Arizona, Appellee,**

v.

**James Granvil WALLACE, Appellant.**

No. 6584.

Supreme Court of Arizona,
En Banc.

Oct. 29, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Diane M. Ramsey and Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Curtis & Cunningham by George H. Curtis, Tucson, for appellant.

## OPINION

HAYS, Justice.

Defendant, James Granvil Wallace, pled guilty to three counts of first-degree murder, A.R.S. § 13–1105, and two counts of armed robbery, A.R.S. § 13–1904. The trial judge sentenced defendant to death on each first degree murder count and to concurrent sentences of twenty-one years on each armed robbery count. Defendant appeals from these sentences. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4035.

On February 2, 1984, defendant telephoned the Tucson Police Department to report that he had killed three people. Defendant told police that he had killed the victims the previous afternoon in a mobile home which he had shared with them. Defendant also gave police the address of the mobile home as well as the address from which he was calling.

Upon receiving the call, police and members of the Pima County Sheriff's office went to the mobile home and verified the report. Defendant was subsequently arrested and, after being advised of his legal rights, defendant gave police a ·detailed confession. Throughout his confession, defendant expressed remorse for his acts and repeatedly requested execution.

Defendant told police that for the past two and one-half years he had shared the mobile home with his girlfriend, Susan Insalaco, and her two children, Anna and Gabe, ages 16 and 12. Defendant stated that just before the murders, he and Susan had argued over defendant's continued use of alcohol and drugs. Additionally, Susan apparently had become interested in another man. For these reasons, on January 31, 1984, Susan asked defendant to move out of the mobile home immediately.

The next day defendant, who had been drinking, remained at the mobile home waiting for Susan and her children to return. At approximately 2:45 ·p.m., Anna arrived home. As she entered the mobile home, defendant attacked her from behind with a baseball bat. He struck her numer-ous times about the head, eventually breaking the bat. Because Anna was moaning and still appeared to be alive, defendant forced a portion of the broken bat through her throat until it hit the floor. He then dragged Anna's body into her mother's bathroom and locked the door.

After obtaining a pipe wrench from an outside storeroom, defendant returned to the living room and waited for Gabe. When Gabe returned from school at approximately 3:00 p.m., defendant followed him into his bedroom. There, defendant surprised Gabe and repeatedly struck him over the head with the pipe wrench. Defendant used such force that the skull was fractured in several places and brain matter was clearly visible on the floor.

Defendant next loaded a handgun and waited for Susan to return from work at 5:00 p.m. By the time she arrived, however, defendant had decided that the gun would make too much noise and might alert the neighbors. When Susan entered the mobile home, she had a brief discussion with defendant and then went to the kitchen to put away groceries. As she turned to face defendant, he struck her on the side of her head with the same wrench he had used on Gabe. Defendant repeatedly struck Susan even after she had collapsed to the floor.

At this point, defendant decided he needed a drink. He took Susan's truck and some money from her wallet and drove to a liquor store. From there defendant drove to a roadside area to drink. After a while, defendant went to a friend's house where he played chess and spent the night. The next day, defendant told his friend what had happened and then telephoned the police.

Defendant was indicted on three counts of murder and two counts of armed robbery, each count containing an allegation of dangerous nature. Defendant notified his lawyers, in writing, that he wanted to be convicted and sentenced to death for these acts. This conduct, in part, prompted one of defendant's lawyers to file a Rule 11 motion. Based on the results of a prelimi-

nary examination, however, the trial court found defendant competent to stand trial.

On March 1, 1985, defendant pled guilty to all counts contained in the indictment. Defendant entered this plea against the advice of his lawyers and without benefit of a plea agreement.[1] In this appeal, defense counsel raises several issues concerning the basis for the plea and the sentences imposed on defendant by the trial court.

## I. ARMED ROBBERY COUNTS

Defense counsel claims there was an insufficient factual basis to support defendant's guilty pleas to each of the armed robbery counts. Specifically, counsel argues that the element of intent, required by the robbery statute, § 13–1902, has not been established.

In Arizona, judgment may be entered on a guilty plea only after the court determines that a factual basis exists for each element of the crime to which the plea is made. Rule 17.3, Ariz.R.Crim.Proc., 17 A.R.S.; *State v. Carr*, 112 Ariz. 453, 454–55, 543 P.2d 441, 442–43 (1975). While this factual basis need not be established beyond a reasonable doubt, the court still must find "strong evidence" of guilt. *State v. Hamilton*, 142 Ariz. 91, 93, 688 P.2d 983, 985 (1984). The evidence may be derived from the record as a whole or any part thereof, including defendant's admissions and statements. *Id.; State v. McVay*, 131 Ariz. 369, 373, 641 P.2d 857, 861 (1982). Where, however, no factual basis exists in the record to support the elements of the crime to which the plea is made, conviction on a guilty plea cannot be sustained. *State v. Carr*, 112 Ariz. at 455, 543 P.2d at 443.

In the instant case, defendant pled guilty to two counts of armed robbery. Thus, to establish a factual basis for the pleas, it must be shown that defendant (1) while armed with a deadly weapon, (2) took property from another person against that person's will, and (3) in the course of taking the property, defendant threatened or used force against that person with the intent to deprive them of their property. A.R.S. §§ 13–1902, –1904. Stated otherwise, there must be evidence establishing that defendant's intent to commit robbery was coexistent with his use of force.

At the time of defendant's plea, the state introduced admissions made by defendant following his arrest. The trial court considered this evidence and found a factual basis for the armed robbery counts. Amidst his confessions, the following exchanges took place between defendant and various detectives:

DEFENDANT: I knew I had to kill her.

DETECTIVE: Why did you have to kill her, Jim?

DEFENDANT: I killed her children.

\*    \*    \*    \*    \*    \*

DETECTIVE: Besides taking money from Susan, did you take anything else?

DEFENDANT: Uh no just money.

DETECTIVE: How much money did you take?

DEFENDANT: I don't know, ten dollars?

DETECTIVE: And where was the money?

DEFENDANT: In her wallet.

DETECTIVE: Did you take the money after she was killed?

DEFENDANT: Yes.

\*    \*    \*    \*    \*    \*

DETECTIVE: After you killed Susan what did you do in the house?

DEFENDANT: I grabbed my pack of clothes, I took what money she had ...

DETECTIVE: Are you telling me that you stole money from Susan?

DEFENDANT: ... Yeah.

DETECTIVE: The money wasn't yours?

DEFENDANT: No.

---

1. We note that throughout these proceedings, including this appeal, defendant has requested no assistance from counsel in defending the charges against him. Appeal to this court is automatic, however, pursuant to § 13–4031.

DETECTIVE: Did she owe you money?

DEFENDANT: No.

DETECTIVE: Why did you steal her money?

DEFENDANT: I needed to, I wanted to get drunk.

DETECTIVE: Why did you want to get drunk?

DEFENDANT: I guess I'm just a drunk.

■ Based on these and other statements in the record, we fail to find a factual basis to support the element of intent required by A.R.S. § 13–1902. Although, as the state argues, defendant may have planned that morning to get drunk following the murders, we do not believe that defendant's use of force upon Susan was intended to "coerce surrender" of her money and truck. Instead, defendant's decision to take these items occurred only after Susan was dead. While defendant's actions may render him liable for another crime, the takings did not amount to armed robbery.

Thus, as the record lacks sufficiently "strong evidence" of guilt as to the armed robbery charges, we conclude that the trial court erred in finding a factual basis for these crimes. We therefore hold that defendant's guilty pleas to the two counts of armed robbery must be vacated.

## II. DEATH PENALTY ISSUES

### A. *Constitutionality*

Defense counsel argues that the Arizona death penalty statute, A.R.S. § 13–703, is unconstitutional because (1) the statute violates the constitutional right to have a jury decide the existence of aggravating and mitigating factors and whether defendant should receive the death penalty; (2) the aggravating factor of "heinous, cruel or depraved" is unconstitutionally vague and arbitrarily imposed; (3) the statute fails to require that the sentencing judge find beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors; (4) the burden of proof is placed upon the defendant to prove mitigating

factors; and (5) the statute does not provide adequate standards for weighing aggravating factors against mitigating factors.

These arguments have been previously considered by this court and rejected on numerous occasions. *See State v. Correll,* 148 Ariz. 468, 715 P.2d 721 (1986); *State v. Bracy,* 145 Ariz. 520, 703 P.2d 464 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 898, 88 L.Ed.2d 932 (1986); *State v. Poland* (Patrick), 144 Ariz. 388, 698 P.2d 183 (1985), *aff'd,* —— U.S. ——, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986); *State v. Richmond,* 136 Ariz. 312, 666 P.2d 57, *cert. denied,* 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983); *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). We conclude, as we have before, that the Arizona death penalty statute is constitutional.

### B. *Independent Review*

■ Defendant received the death sentence on each of the three murder counts. In sentencing defendant, the trial court found the existence of one aggravating circumstance with respect to the murders of Anna and Gabe, and two aggravating circumstances with respect to the murder of Susan. As to all three murder counts, the court found one mitigating circumstance but ruled that it was not "sufficiently substantial to call for leniency." Thus, as in every death penalty case, this court must independently review the record to determine for itself the presence or absence of aggravating and mitigating circumstances, and to determine whether imposition of the death penalty is appropriate. *State v. Richmond,* 136 Ariz. at 320, 666 P.2d at 65.

#### 1. *Aggravating Circumstances*

■ The first aggravating circumstance found by the trial court was that the murders were committed in an especially heinous, cruel or depraved manner. A.R.S. § 13–703(F)(6). As the statutory expression is in the disjunctive, it is not necessary that all three elements be present. A finding of any one of these factors is sufficient

to constitute the aggravating circumstance. *State v. Libberton,* 141 Ariz. 132, 139, 685 P.2d 1284, 1291 (1984); *State v. Clark,* 126 Ariz. 428, 436, 616 P.2d 888, 896, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). We, therefore, consider these elements separately.

■ Cruelty has been defined as the pain and distress suffered by a victim before death. *State v. Gretzler,* 135 Ariz. at 51, 659 P.2d at 10; *State v. Woratzeck,* 134 Ariz. 452, 457, 657 P.2d 865, 870 (1983). To support a finding of cruelty, evidence of the suffering or pain experienced by the victim must be apparent. *State v. Tison* (Ricky), 129 Ariz. 526, 543, 633 P.2d 335, 352 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). Thus, we have held that a finding of cruelty was proper where the defendants performed successive rapes and severe beatings on the victim prior to killing her, *State v. Mata,* 125 Ariz. 233, 609 P.2d 48, *cert. denied,* 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980), and where the defendant burned to death his two daughters by setting fire to their room as they slept, *State v. Knapp,* 114 Ariz. 531, 562 P.2d 704 (1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). We have also found cruelty in the terror suffered by victims who were held at gunpoint and then forced to witness the killing of other family members while waiting to be killed themselves. *See, e.g., State v. Bracy, supra; State v. McCall,* 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984); *State v. Tison, supra.*

■ Where the state fails to prove beyond a reasonable doubt that the victim was conscious at the time of death, this court has held that a finding of cruelty is inappropriate. *E.g., State v. Poland,* 144 Ariz. at 405, 698 P.2d at 200; *State v. Ortiz,* 131 Ariz. 195, 210, 639 P.2d 1020, 1035 (1981), *cert. denied,* 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982), *overruled on other grounds, State v. Gretzler, supra; State v. Ceja,* 126 Ariz. 35, 39, 612 P.2d 491, 495 (1980). In the present case,

defendant attacked each of his victims quickly and by surprise. The state offered no evidence to establish pain or suffering by the victims. Moreover, the record is inconclusive as to whether any of the victims were even conscious following the initial blow to the head. *Accord State v. McCall,* 139 Ariz. at 161, 677 P.2d at 934 (cruelty shown where medical testimony established that victim did not lose consciousness from first head wound and therefore "most certainly" suffered pain). Accordingly, we find that the element of cruelty has not been established beyond a reasonable doubt.

■ We do, however, agree with the trial court that the evidence supports a finding that the murders were committed in a heinous and depraved manner. Unlike cruelty, which focuses on the victim's pain and suffering, heinousness and depravity involve the killer's mental state and attitude at the time of the offense. *State v. Gretzler,* 135 Ariz. at 51, 659 P.2d at 10. In *Gretzler,* this court set forth a list of specific factors which may lead to a finding of heinousness or depravity: (1) the apparent relishing of the murder by the killer; (2) the infliction of gratuitous violence on the victim; (3) the needless mutilation of the victim; (4) the senselessness of the crime; and (5) the helplessness of the victim. *Id.* at 52, 659 P.2d at 11; *see also State v. Smith,* 146 Ariz. 491, 503, 707 P.2d 289, 301 (1985). In reviewing the record, we find several of these factors to be present.

Defendant committed these brutal murders by striking his victims over the head with either a baseball bat or a pipe wrench. He continued to beat each victim even after they had collapsed to the floor. The force used in each case was enough to fracture the victim's skull. Defendant struck one of the victims so severely that a substantial amount of brain matter was spattered on the floor and wall. Additionally, in killing Anna, defendant shoved a jagged portion of the broken baseball bat through her throat after he had already beaten her. We believe, therefore, that defendant's actions clearly amount to "gratuitous vio-

lence." Had defendant's intent been merely to kill these people, less violent alternatives were readily available to him. *See State v. Tison,* 129 Ariz. at 543, 633 P.2d at 352. Specifically, defendant admits to having had a loaded gun with him that afternoon. He deliberately chose not to use it, however, because the noise would alert neighbors. In our opinion, defendant's conduct reflects a "total disregard for human life." *State v. Correll,* 148 Ariz. at 481, 715 P.2d at 734.

Further, we find defendant's heinous or depraved state of mind evident in the senselessness of this crime. Although all murders may be considered senseless, this one is particularly disturbing. After lying in wait for several hours, defendant brutally murdered a mother and her two children. Defendant committed these acts despite the fact that he claims to have loved these people and, that he lived with them as a family for more than two years. Although there is some evidence that he and Susan argued, defendant nevertheless steadfastly maintains there was no reason or justification for what he did. Moreover, the fact that defendant killed two children, with whom he admittedly had no dispute and who posed no danger to him, is additional evidence of his "shockingly evil state of mind." *State v. Tison,* 129 Ariz. at 543, 633 P.2d at 352. We therefore find that the statutory aggravating factor of heinous and depraved is present in the instant case.

■ The second aggravating circumstance found by the trial court was that defendant, with respect to Susan only, committed the murder for pecuniary gain. A.R.S. § 13–703(F)(5). For this circumstance to be present, the expectation of pecuniary gain "must be a cause of the murder, not merely a result." *State v. Libberton,* 141 Ariz. at 139, 685 P.2d at 1291; *State v. Harding,* 141 Ariz. 492, 500, 687 P.2d 1247, 1255 (1984), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984). Thus, the mere fact that money and items are taken is insufficient, by itself, to establish this aggravating circumstance. *State v. Gillies,* 135 Ariz. 500, 512,

662 P.2d 1007, 1019 (1983). Instead, "[t]he state must show the actor's *motivation* was the expectation of pecuniary gain...." *State v. Carriger,* 143 Ariz. 142, 161, 692 P.2d 991, 1010 (1984), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985) (emphasis in original).

■ For reasons previously discussed in relation to the armed robbery charges, we do not believe there is sufficient evidence to support a finding of pecuniary gain as a motive for the murder. Although defendant took some money and the keys to Susan's truck, it is not evident that obtaining these items was the reason for the murder. Defendant's motive, if any, appears to stem from the difficulties in his relationship with Susan. The taking of Susan's property was therefore only incidental to the murder. *Accord State v. Gillies, supra* (finding of pecuniary gain not proper where, even though money and credit cards were taken, defendant's primary purpose was to eliminate the victim as a witness to her own rape). A finding of pecuniary gain under these facts would be inconsistent with those cases in which we have previously found the existence of this aggravating circumstance. *See, e.g., State v. Smith,* 146 Ariz. at 503, 707 P.2d at 301; *State v. Libberton,* 141 Ariz. at 139, 685 P.2d at 1291; *State v. Gretzler,* 135 Ariz. at 49–50, 659 P.2d at 8–9. The trial court's finding of pecuniary gain is therefore set aside.

### 2. *Mitigating Circumstances*

■ At the sentencing hearing, the trial court found the existence of only one mitigating circumstance:

I think there isn't any question about your genuine remorse. And I feel it. I believe it. I find that, indeed, you're genuinely remorseful. That is a mitigating circumstance.

The court ruled, however, that defendant's remorse was not "sufficiently substantial to call for leniency." A.R.S. § 13–703(G). In making this ruling, the trial court balanced defendant's remorse for having committed the murders against the aggravat-

ing factors found to be present. We accept the trial court's determination that, given the nature and gravity of this crime, the presence of remorse as a mitigating factor does not warrant leniency in the case of the two children. As to the sentence imposed upon defendant for Susan's murder, we remand to the trial court for resentencing.

■ In sentencing defendant for the murders of the two children, the trial court balanced defendant's remorse against the aggravating factor of "heinous or depraved" conduct. However, in sentencing defendant for Susan's murder the trial court balanced defendant's remorse against *two* aggravating factors, "heinous or depraved" conduct and pecuniary gain. As we have set aside the finding of pecuniary gain, we must now allow the trial court another opportunity to exercise its sentencing discretion and reweigh the remaining aggravating and mitigating factors. *State v. Gillies*, 135 Ariz. at 516, 662 P.2d at 1023 (supplemental opinion). On remand, the trial court should therefore consider whether defendant's remorse over having murdered his girlfriend is substantial enough to overcome the heinous and depraved nature of his conduct. Since we have not altered the trial court's findings as to the aggravating and mitigating factors surrounding the murders of the two children, we must proceed with our independent review to determine the appropriateness of the death sentence in those cases.

Defense counsel raises two final arguments relating to the existence of mitigating circumstances. First, counsel claims that the trial court's failure to find intoxication as a mitigating factor was error. We disagree.

■ In *State v. Woratzeck, supra,* we set forth the relationship between a defendant's intoxication and the existence of a mitigating circumstance:

> The fact that a defendant was to some degree intoxicated is not, by itself, a mitigating circumstance. Whether the defendant's intoxication was a mitigating circumstance such as would make imposition of the death penalty for homicide inappropriate depends upon whether his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to requirements of law was significantly impaired.

134 Ariz. at 458, 657 P.2d at 871; *see also State v. Jordan,* 126 Ariz. 283, 289–90, 614 P.2d 825, 831–32, *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). Here, the only evidence that defendant had been drinking on the day of the murders came from his own statements to police. Based on these statements, the effect of the alcohol on defendant, if any, appears to have been minimal. Defendant told police that he knew what he was doing on the afternoon in question and that he knew what he was doing was "not right." Additionally, defendant was able to recall for police, in great detail, how and where he killed each of the victims. Thus, we find that defense counsel has failed to prove that defendant's intoxication was a mitigating circumstance.

Similarly, we find that neither defendant's "difficult earlier years" nor his use of "various drugs" so affected his capacity to conform to the requirements of law that they constitute mitigating factors under § 13–703(G)(1).

Defense counsel's second claim of error is that the trial judge should have found that defendant committed the murders while under "unusual and substantial duress." A.R.S. § 13–703(G)(2). The basis for this duress, although unclear, appears to be Susan's request that defendant move out of the mobile home.

■ We have defined duress as "any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." *State v. Castaneda,* 150 Ariz. 382, 724 P.2d 1 (1986), *quoting* Black's Law Dictionary 452 (5th ed. 1979). After reviewing the facts of this case, we do not believe defendant's situation amounted to duress. While his relationship with Susan may have been

strained, there is no evidence that defendant murdered Anna or Gabe as a result of provocation or threats.

█ Additionally, defense counsel's claim that these crimes were the result of passion is also unsupported. Defendant told Dr. Bendheim, a court-appointed psychiatrist, that he and Susan argued several times other than the night before the murders, and that this particular argument was relatively mild in comparison. Defendant further told Dr. Bendheim that he expected Susan to ask him to come home just as she had on other occasions. Dr. Bendheim testified that, in his opinion, defendant showed neither anger nor resentment toward Susan for having asked him to leave the house. Thus, we fail to see how the murders of Susan's two children can be characterized as an act of passion. The mitigating circumstance of A.R.S. § 13–703(G)(2) is not present.

Having independently reviewed the record, we conclude that defendant committed each of the murders in an especially heinous and depraved manner.[2] Additionally, we agree with the trial court that no mitigating circumstances sufficiently substantial to call for leniency have been shown.

### C. *Proportionality Review*

As part of our independent review, this court is required to conduct a proportionality review to determine "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); *see also State v. Poland,* 144 Ariz. at 407, 698 P.2d at 202.

In conducting this review, we have considered those cases involving the presence of one aggravating circumstance and no mitigating circumstances sufficiently substantial to call for leniency. *E.g., State v.*

*Bishop,* 127 Ariz. 531, 622 P.2d 478 (1980); *State v. Ceja, supra; State v. Knapp, supra.* We also have considered those cases where a sentence of death has been reduced to life imprisonment. *E.g., State v. Johnson,* 147 Ariz. 395, 710 P.2d 1050 (1985) (death sentence improper where no aggravating factors present); *State v. Valencia,* 132 Ariz. 248, 645 P.2d 239 (1982) (youth of defendant); *State v. Brookover,* 124 Ariz. 38, 601 P.2d 1322 (1979) (substantial mental impairment due to brain lesion).

█ Based on our review of these decisions, we believe imposition of the death penalty in this case is proportional to those sentences imposed in similar cases. The senseless and gruesome deaths inflicted by defendant upon his girlfriend's two young children certainly justify the sentences imposed by the trial court.

The sentence of death is, therefore, affirmed as to Count I and Count II. For the reasons stated, we remand for resentencing on Count III. The trial court's order accepting defendant's plea of guilty to the armed robbery counts, and the sentences imposed thereon, are hereby vacated.

HOLOHAN, C.J., GORDON, Jr., V.C.J., and CAMERON and FELDMAN, JJ., concur.

---

**2.** We note that had this crime been committed after September 1, 1984, a second aggravating factor would also have been present. § 13–703(F)(8) now provides that the court shall con-

sider whether the defendant "has been convicted of one or more other homicides ..., which were committed during the commission of the offense."