799 P.2d 352

STATE of Arizona, Appellee,

v.

John Albert HINCHEY, Appellant.

No. CR–87–0317–AP.

Supreme Court of Arizona,
En Banc.

July 31, 1990.

Robert K. Corbin, Atty. Gen., Jessica Gifford Funkhouser, Chief Counsel, Crim. Div., and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender, Paul Klapper and Mary Lynn Bogle, Maricopa County Deputy Public Defenders, Phoenix, for appellant.

GORDON, Chief Justice.

John A. Hinchey (defendant) appeals from his conviction for first-degree murder and from imposition of the death penalty. Following a jury trial, the trial court sentenced defendant to an aggravated term of 21 years for attempted first-degree murder and imposed the death penalty for first-degree murder. We have jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution and A.R.S. § 13–4031. We affirm the conviction but remand for resentencing.

## FACTS

In the early-morning hours of September 29, 1985, defendant argued with the woman he had lived with for 12 years about her two daughters from a prior marriage. After the woman went downstairs to sleep in a chair, defendant followed to continue the argument. Defendant pulled out a pistol purchased the day before and shot her four times.

Defendant then kicked open the locked bedroom door of the woman's 17–year–old daughter. The daughter was asleep but awoke when defendant broke in her door. The daughter's infant son was sleeping in the same room. Defendant shot the daughter twice in the face and left the bedroom.

The mother had managed to run outside. Defendant pursued and caught her, then beat her with the pistol until the trigger guard broke, at which point he beat her head against some rocks. Defendant left the gun lying beside the mother on the sidewalk and returned to the daughter's bedroom. Hearing the daughter moan, defendant grabbed a tonic water bottle and beat her over the head until the bottle shattered. When the daughter continued to moan, defendant went to the kitchen, got a knife and returned to her room where he

stabbed her numerous times, leaving the knife in her abdomen. The daughter died but her infant son was unharmed. The mother survived.

Defendant drove to a police station, turned himself in, and gave a taped confession. Defendant was charged by indictment with first-degree murder for the daughter's death and attempted first-degree murder for assaulting the mother. Originally, defendant entered into a plea agreement in exchange for a life sentence plus 21 years and was sentenced in accordance with the plea agreement. Defendant subsequently requested post-conviction relief, alleging improper denial of his motion to withdraw his guilty plea. The superior court granted relief and reinstated the original charges.

Prior to trial, defendant filed a motion for a determination of his competency to stand trial and of his mental condition at the time of the offense. *See* Rule 11, Ariz. R.Crim.Pro. The trial court found defendant competent to stand trial after reviewing reports from appointed experts. In addition, defendant sought to preclude admission of other bad act evidence, specifically, an assault on the daughter with a hammer about 14 months earlier. The trial court heard arguments on this motion and determined that the evidence was admissible under Rule 404(b), Ariz.R.Evid., for purposes of showing preparation, plan or intent, and that the probative value of the evidence outweighed any potential prejudice.

At trial, defendant presented an insanity defense, claiming alcohol-induced psychosis, and did not testify on his own behalf. The jury returned a verdict of guilty on both counts.

The trial court conducted an aggravation-mitigation hearing prior to sentencing pursuant to A.R.S. § 13–703. In addition to the presentence reports, the judge heard testimony from the murder victim's mother about the crimes' impact on her and her family. Defendant presented no witnesses in mitigation although the judge considered letters from defendant's ex-wife and friends.

The court entered its special verdict, finding two aggravating factors: (1) defendant was previously convicted of a felony involving the use or threat of violence on another person as set forth in A.R.S. § 13–703(F)(2); and (2) defendant committed the offense in an especially heinous, cruel and depraved manner as set forth in A.R.S. § 13–703(F)(6). The judge found that defendant's conviction on a charge of endangerment, a class 6 felony, for an earlier assault on the murder victim, constituted a § 13–703(F)(2) aggravating circumstance. In finding the second factor, the court considered testimony elicited at trial from the officer who took defendant's confession and from the first officer to arrive on the scene. In addition, the court considered the surviving victim's testimony at both the trial and the sentencing hearing. The court also found two mitigating factors pursuant to A.R.S. § 13–703(G)(1): (1) that defendant may have experienced diminished capacity due to an alcohol abuse problem; and (2) that defendant was held in high regard by his ex-wife and a former friend.

The court weighed the factors and found the mitigating circumstances insufficient to call for leniency. The judge imposed the death penalty for count I and the maximum sentence of 21 years for count II. Defendant filed a timely notice of appeal claiming the following errors:

1. The trial court erred by admitting evidence of defendant's earlier attack on victim;

2. the trial court should not have used a prior class 6 felony endangerment conviction as an aggravating circumstance for imposition of the death penalty pursuant to A.R.S. § 13–703(F)(2);

3. the trial court erred by receiving and considering victim impact statements at the sentencing hearing; and

4. the trial court erred by finding that the evidence established that the defendant committed the murder in an especially heinous, cruel and depraved manner.

In addition, defendant raised the following constitutional claims: (1) Arizona's

death penalty statute, which includes commission of the murder in a heinous, cruel and depraved manner, is unconstitutionally vague; (2) the sentencing scheme unconstitutionally shifts the burden of proving mitigating circumstances to the defendant; (3) Arizona's statute fails to provide a death-penalty-eligible defendant a jury trial at the sentencing stage as required by the Constitution; (4) prosecutorial discretion to seek the death penalty is unconstitutional; (5) the death penalty statute unconstitutionally provides for a mandatory death sentence; and (6) the death penalty statute is unconstitutional because the State is not required to prove that aggravating factors outweigh mitigating factors beyond a reasonable doubt.

We previously considered and rejected the constitutional arguments presented. *See, e.g., State v. Vickers,* 159 Ariz. 532, 544, 768 P.2d 1177, 1189 (1989) ("especially heinous, cruel or depraved" aggravating circumstance not unconstitutionally vague); *State v. Fulminante,* 161 Ariz. 237, 258, 778 P.2d 602, 623 (1988) (burden of proof on defendant for mitigating circumstances constitutional); *State v. Correll,* 148 Ariz. 468, 483–84, 715 P.2d 721, 736–37 (1986) (jury trial not required for capital sentence); *State v. Harding,* 137 Ariz. 278, 292, 670 P.2d 383, 397 (1983) (prosecutorial discretion upheld), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984); *State v. Zaragoza,* 135 Ariz. 63, 69, 659 P.2d 22, 28 (1983) (not an unconstitutional mandatory death penalty statute), *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983); *State v. Schad,* 129 Ariz. 557, 574, 633 P.2d 366, 383 (1981)

(State's burden of proof for aggravating circumstances constitutional), *cert. denied,* 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982). Given the disposition of this case, we will not reconsider the constitutional arguments at this time.[1] Accordingly, our review on appeal is limited to claims of error one through four.

## DISCUSSION

A. Trial Phase

*Admissibility of Evidence of Earlier Attack on Victim*

Defendant complains that the trial court erroneously admitted evidence of his attack on the daughter about 14 months before her murder. In a pretrial hearing, the State argued that evidence of the earlier attack was admissible under Ariz.R.Evid. 404(b) to show preparation, plan and intent and was independently admissible should defendant raise a defense of insanity. The trial court ruled the evidence admissible under Rule 404(b) to show preparation, plan and intent, that it was relevant and that the probative value of the evidence outweighed any prejudice to the defendant. Defendant claims that the prior attack was irrelevant to these issues. He asserts the attack was spontaneous and carried out under the influence of alcohol (negating relevance to plan and intent) and that it was too remote from the offense charged (negating relevance to preparation).

■ As an initial matter, we note that defendant's assertions go to the weight of the evidence, not to whether the evidence is

1. With regard to any potential constitutional challenges, we note the United States Supreme Court recently affirmed the constitutionality of Arizona's death penalty scheme as it relates to four of the six issues raised by defendant. *See Walton v. Arizona,* — U.S. —, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). The Court affirmed that judge-made determinations of aggravating/mitigating circumstances as well as sentencing for capital offenses do not violate the Sixth Amendment of the United States Constitution. — U.S. at — – —, 110 S.Ct. at 3054–55. The majority also affirmed Arizona's construction of the "especially heinous, cruel or depraved" aggravating circumstance as not violating the Eighth and Fourteenth Amendments

of the United States Constitution because it provides sufficient guidance to the sentencer. — U.S. at — – —, 110 S.Ct. at 3057–58; *See also Lewis v. Jeffers,* — U.S. —, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (further affirming Arizona's construction of "especially heinous or depraved" aggravating circumstance). In addition, a plurality determined the sentencing statute did not impermissibly mandate the death sentence. *Walton,* — U.S. at — – —, 110 S.Ct. at 3056–57. Finally, allocating to the defendant the burden of proving mitigating circumstances did not lessen the State's burden of proving aggravating circumstances and does not violate the eighth and fourteenth amendments. — U.S. at — – —, 110 S.Ct. at 3055–56.

relevant and admissible. Moreover, regardless of whether the evidence of the prior attack was properly admissible under Rule 404(b), it was independently admissible because defendant placed his sanity at issue.

■ Relevant prior bad acts are admissible if a defendant's sanity is at issue. *State v. Vickers*, 159 Ariz. 532, 540, 768 P.2d 1177, 1185 (1989). Once a defendant raises insanity as a defense, evidence of prior bad acts falls out of the limitations of Rule 404. All prior relevant conduct in the defendant's life is admissible because such evidence may assist the trier of fact in determining criminal responsibility. *State v. Skaggs*, 120 Ariz. 467, 470–71, 586 P.2d 1279, 1282–83 (1978). Where insanity is an issue, both defendant and State may present evidence of "previous troubles" to assist the jury in understanding defendant's mental condition at the time of the crime. *State v. Rodriguez*, 126 Ariz. 28, 31, 612 P.2d 484, 487 (1980).

At trial, defendant claimed his acts resulted from alcohol-induced psychosis. The issue for the trier of fact's determination was defendant's responsibility for his conduct at the time the crime was committed. The evidence at issue involved "previous troubles" between defendant and the murder victim and could assist the trier of fact's determination of criminal responsibility by throwing light on the act constituting the crime. The evidence, therefore, is relevant to the issue of sanity. The trial court did not commit reversible error by allowing in evidence of the prior attack.

## B. Sentencing Phase

■ The eighth amendment requires that the sentencer's discretion be channeled and limited to avoid the risk of wholly arbitrary and capricious action. *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372 (1988). In Arizona, the legislature left sentencing discretion to the trial court in order to achieve greater consistency in the imposition of death penalties. *State v. Watson*, 120 Ariz. 441, 447, 586 P.2d 1253, 1259 (1978) (quoting *Proffitt v. Florida*, 428 U.S. 242,

252, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913 (1976)), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979).

Our legislature limited to ten the number of circumstances the sentencing court may consider in aggravation. *See* A.R.S. § 13–703(F)(1–10). This Court, through constructive limitations of several of the statutorily defined circumstances, has provided further guidance to the sentencing court to obviate the risk of the statute's arbitrary or capricious application. *See, e.g., State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983). This case presents questions on two previously limited aggravating circumstances: (1) previous conviction of a felony involving the use or threat of violence, A.R.S. § 13–703(F)(2); and (2) commission of the offense in an especially heinous, cruel or depraved manner, A.R.S. § 13–703(F)(6).

### 1. *Prior Conviction Involving Violence*

■ Defendant's second claim of error is that the sentencing judge improperly found his earlier conviction for endangerment an aggravating circumstance for the purpose of determining whether to impose the death penalty. Defendant claims that endangerment is not necessarily a crime involving the use or threat of violence and, therefore, his earlier felony conviction for endangerment is not an aggravating circumstance pursuant to § 13–703(F)(2).

In its sentencing memorandum, the State argued that defendant's previous conviction for felony endangerment constituted such an aggravating circumstance. At the aggravation-mitigation hearing, testimony from the murder victim's mother was offered to identify defendant as the person found guilty of the endangerment charge. In addition, the mother's testimony was offered to prove that violence was in fact used in the earlier crime. At the State's request, the court took judicial notice of the prior conviction in Maricopa County Superior Court. Following the hearing, defendant filed a sentencing memorandum, claiming that the State failed to prove the "prior conviction for a crime involving vio-

lence" because the felony alleged, endangerment, does not necessarily include use of or threat of violence. Moreover, according to defendant, the State's use of the mother's testimony to establish that violence occurred in the prior crime was inadmissible hearsay and, therefore, could not be used to support consideration of that aggravating factor.

In its special verdict, the court found that the State proved the existence of a prior felony conviction involving use of violence, relying on the mother's testimony. The court found the mother's testimony reliable and, although hearsay, within the excited utterance exception to the hearsay rule under Ariz.R.Evid. 803(2).

We recently discussed again the type of crime that properly constitutes a § 13–703(F)(2) aggravating circumstance. To qualify, the crime must involve, by statutory definition, the use or threat of violence as a necessary element. *State v. Romanosky*, 162 Ariz. 217, 227–28, 782 P.2d 693, 703–04 (1989) (citing *State v. Gillies*, 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983)); *see also State v. Lopez*, 163 Ariz. 108, 114, 786 P.2d 959, 965 (1990) (resisting arrest conviction does not qualify as a § 13–703(F)(2) aggravating circumstance). For sentencing purposes, the State must produce evidence of a defendant's previous conviction for a felony that could be committed only with the use or threat of violence. To find the aggravating circumstance, the court may consider only evidence of the conviction; allowing other evidence to establish the violence element violates defendant's due process rights. *Gillies*, 135 Ariz. at 511, 662 P.2d at 1018.

In this case, defendant's earlier conviction for endangerment does not qualify as a § 13–703(F)(2) aggravating circumstance. Previously, we discussed the legislative intent underlying the term "violence" in § 13–703(F)(2). That term encompasses crimes involving "exertion of any physical force so as to injure or abuse." *State v. Arnett*, 119 Ariz. 38, 51, 579 P.2d 542, 555 (1978). A person commits endangerment by "recklessly endangering another person with the substantial risk of imminent death

or physical injury." A.R.S. § 13–1201(A). However, conduct punishable by this statute does not necessarily require the exertion of physical force or an intent to harm. *See* Arizona Revised Criminal Code, Commission Report 134 (1975) (noting that this statute was designed to punish such conduct as recklessly discharging firearms in public, pointing firearms at another, obstructing public highways, or abandoning life-threatening containers attractive to children).

Because the use or threat of violence is not a necessary element of the crime of endangerment, the judge at sentencing should not have considered defendant's prior conviction as an aggravating circumstance. Although evidence of the prior conduct was admissible at the trial stage on the issue of insanity, using extrinsic evidence of the circumstances surrounding the previous conviction to establish the element of violence was improper. We therefore vacate the trial court's finding of this aggravating circumstance.

### 2. Especially Cruel, Heinous or Depraved

Defendant's third and fourth claims of error question the propriety of the trial court's finding that the murder was committed in an especially heinous, cruel or depraved manner pursuant to A.R.S. § 13–703(F)(6). Defendant argues that the judge improperly heard and considered victim impact statements in finding this aggravating circumstance and in imposing the death penalty. Moreover, defendant claims that the other evidence presented was insufficient to support this finding.

Defendant raises his latter argument in conjunction with the assertion that A.R.S. § 13–703(F)(6) is unconstitutionally vague. He contends that this portion of the statute results in open-ended sentencing discretion and that the evidence relied on by the court to find this aggravating circumstance demonstrates that the court arbitrarily applied this standard. As noted above, we will not consider the constitutional argument at this

time.[2] However, we have an independent duty to review whether the evidence supports a finding of the § 13–703(F)(6) aggravating factor. *State v. Roscoe*, 145 Ariz. 212, 226, 700 P.2d 1312, 1326 (1984), *cert. denied*, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 525 (1985).

A.R.S. § 13–703(F)(6) calls for consideration of the death penalty if the court finds "[t]hat the defendant committed the offense in an especially heinous, cruel or depraved manner." At sentencing, the judge found that defendant's confession, testimony of the murder victim's mother, and testimony presented by the first officer to arrive at the scene established the existence of all three factors.

The judge found that defendant committed the murder in a cruel manner based on the events surrounding the killing. Circumstances noted by the court in finding the "cruel" factor included defendant's intent to commit the murder, that the victim and her child were asleep when defendant broke into the victim's bedroom, that three separate instruments were used to commit the act and that the victim moaned.

 As reprehensible as defendant's actions appear, we cannot agree that the evidence supports a finding that the crime was committed in an "especially cruel" manner, as the term has been defined. This factor depends on the State presenting evidence establishing beyond a reasonable doubt that the victim actually suffered physical or mental pain prior to death. *State v. Gretzler*, 135 Ariz. 42, 51, 659 P.2d 1, 10 (1983). To qualify as a § 13–703(F)(6) "committed in an especially cruel manner" aggravating circumstance, defendant's acts must have been committed while the victim was conscious; otherwise, the evidence is inconclusive as to whether the victim *actually* suffered pain or distress. *State v. Fulminante*, 161 Ariz. 237, 255, 778 P.2d

602, 620 (1988). In addition, the State must show that defendant either intended or reasonably foresaw that the victim would suffer as a result of his acts. *State v. Smith*, 146 Ariz. 491, 504, 707 P.2d 289, 302 (1985).

At oral argument, the State conceded that the victim's moaning was the only evidence she suffered pain and that her moaning may have been an involuntary, reflexive act. During trial, the medical examiner testified that he could not determine conclusively whether the gunshot wound to the head or the stab wounds to the abdomen occurred first but that the gunshot wound, by itself, could have rendered the victim unconscious. Defendant confessed that he shot the victim first. A review of the record indicates that the State presented no evidence to contradict defendant's confession nor did the State prove beyond a reasonable doubt that the victim was conscious and experiencing pain after she was shot through the brain. In addition, the State presented no evidence that defendant intended or foresaw that the victim would suffer.

Although defendant's acts no doubt satisfy the everyday meaning of the term "cruel," the evidence is insufficient to satisfy the State's burden of proving beyond a reasonable doubt that the defendant's acts meet the statutory definition of "especially cruel" in the context of first-degree murder cases. *See State v. Poland*, 144 Ariz. 388, 405, 698 P.2d 183, 200 (1985). We therefore vacate the trial court's finding that the crime was committed in an especially cruel manner.

 This determination, however, does not dispose of the question of whether the trial court properly found the A.R.S. § 13–703(F)(6) circumstance. We consider the terms "especially heinous, cruel or depraved" in the disjunctive and a finding beyond a reasonable doubt of any one of

---

**2.** In *Walton v. Arizona,* ── U.S. ──, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), the Court declared "there is no serious argument that Arizona's 'especially heinous, cruel or depraved' aggravating factor is not facially vague. But the Arizona Supreme Court has sought to give substance to the operative terms, and we find that its construction meets constitutional requirements."

── U.S. at ──, 110 S.Ct. at 3057. As construed, therefore, the statute is not unconstitutionally vague. However, defendant's implied challenge, that the trial court's finding on this circumstance is unconstitutional "as applied," will be considered, if necessary, after resentencing.

the three alternative elements is sufficient to find this circumstance exists. *See, e.g.,* *State v. Fulminante,* 161 Ariz. 237, 254, 778 P.2d 602, 619 (1988); *State v. Wallace,* 151 Ariz. 362, 366, 728 P.2d 232, 236 (1986); *State v. Correll,* 148 Ariz. 468, 480, 715 P.2d 721, 733 (1986).

▇ The court found "especially depraved" based on the same factors it found "especially cruel" and, in addition, the court cited defendant's previous attack on the victim, her age and that she was helpless at the hands of her supposed stepfather. The "brutal manner in which the defendant committed this offense," the victim's youth, helplessness and innocence of any provocation, and the unjustified nature of her death were factors leading to the finding of "heinous." These factors were also established, according to the judge, by defendant's knowledge that the victim's child was left motherless and by his lack of remorse.

We have stated numerous times that both terms concern the mental state and attitude of the perpetrator at the time of the offense. Factors appropriate for consideration include apparent relishing of the murder by the killer, needless mutilation of the victim, senselessness of the crime, helplessness of the victim, and infliction of gratuitous violence on the victim. *See, e.g.,* *State v. Fulminante,* 161 Ariz. 237, 248, 778 P.2d 602, 621 (1988).

The special verdict indicates that the judge found the crime was committed in an especially heinous or depraved manner based, in part, on the gratuitously violent form of attack with three separate instruments, the senselessness of the crime and the helplessness of the victim. Previously, we agreed that such findings support a determination that the crime was committed in an especially heinous or depraved manner. *State v. Wallace,* 151 Ariz. 362, 367–68, 728 P.2d 232, 237–38 (1986) (defendant's use of several instruments when less violent alternatives available to accomplish intent to kill constitutes heinous or depraved state of mind); *State v. Carriger,* 143 Ariz. 142, 160, 692 P.2d 991, 1009 (1984) (three separate forms of attack used

to kill victim establishes both heinous and depraved state of mind), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985).

Our independent review of the record leads us to agree with the sentencing court that the evidence could establish defendant committed the crime in an especially heinous and depraved manner. Defendant used considerably more force than necessary to accomplish his deed. After shooting the victim in the face twice, defendant left her lying in a pool of blood while he pursued the mother whom he beat with the gun until it broke. Defendant then returned to the victim's room and, lacking a workable gun, beat her over the head with a large bottle until it too shattered. Not satisfied with having shot and beaten his young victim, defendant went to the kitchen, found a large knife, and returned to her room to stab her several times, leaving the knife protruding from her abdomen. These acts were committed on a 17-year-old girl who was asleep and helpless when defendant first entered her room. We concur with the trial court's determination that defendant's acts constitute commission of the crime in an especially heinous and depraved manner.

▇ Defendant, however, claims the judge was improperly influenced in making the "especially heinous and depraved" finding by testimony from the victim's mother at the sentencing hearing and by the contents of the pre-sentence report. Defendant asserts that receiving and considering these statements violates *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and *State v. Beaty,* 158 Ariz. 232, 762 P.2d 519 (1988).

The United States Supreme Court, in *Booth,* held that consideration of victim impact statements for capital sentencing purposes violates the eighth amendment of the United States Constitution. The Court reasoned that admitting evidence of the personal characteristics of the victim, the emotional impact on the victim's family, and the family's opinion of the crime and the defendant could divert the sentencing jury's attention from the proper sentencing

considerations—the defendant's character and the nature of the crime. *Booth,* 482 U.S. at 500, 107 S.Ct. at 2533. In *Beaty,* we held that the *Booth* reasoning does not automatically apply to Arizona's sentencing scheme because sentencing is conducted by the trial judge, not the jury. Instead, we held that "[a]bsent proof to the contrary, the trial judge in a capital case must be presumed to be able to focus on the relevant sentencing factors and to set aside the irrelevant, the inflammatory, and the emotional factors." *Beaty,* 158 Ariz. at 244, 762 P.2d at 531.

This case involves convictions for both capital and non-capital offenses. For sentencing purposes, evidence of the impact on the victims may be considered when determining the sentence for a non-capital offense. A.R.S. § 13–702(F). Circumstances the court may consider for determining the appropriate sentence for a capital offense, however, are limited to those factors set out in A.R.S. § 13–703 which does not, and should not, include consideration of the impact on the victims. Although the judge below heard statements concerning the crime's impact on the victim's family, the A.R.S. § 13–703(F)(6) circumstance finding did not depend on those statements. Gratuitous violence, senselessness of the crime and helplessness of the victim, all relevant sentencing factors, were cited in the special verdict, along with other factors. We therefore find the presumption favoring the sentencing judge's objectivity was not overcome. The trial court's finding that the crime was committed in an "especially heinous and depraved manner" may be sustained.

## CONCLUSION

██ At sentencing, the judge made a specific finding that the circumstances identified in mitigation were not sufficient to overcome the two circumstances found in aggravation. We hold that one of the two circumstances, previous conviction of a felony involving violence, does not apply in this case. Because we cannot determine from the record whether the court would have found the mitigating circumstances

sufficient to overcome the single remaining aggravating circumstance, we believe it is appropriate to allow the trial court another opportunity to exercise its sentencing discretion. *See State v. Gillies,* 135 Ariz. 500, 516, 662 P.2d 1007, 1023 (1983). Accordingly, we remand for a new hearing and sentence. The new hearing will involve only the capital offense; it would be improper, therefore, for the court to consider statements concerning the crime's impact on the victims and family members.

We have searched the record for fundamental error and found none. Because we remand, we will not conduct a proportionality review at this time. We will undertake this task if a sentence of death is imposed after remand.

Judgment of conviction affirmed. Sentence of death vacated on the first-degree murder conviction and the cause remanded for resentencing in accordance with this opinion.

FELDMAN, V.C.J., and MOELLER, J., and ALICE TRUMAN, Judge, Superior Court, concur.

CAMERON and CORCORAN, JJ., recused themselves and did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, THOMAS C. KLEINSCHMIDT, Judge, Court of Appeals, Division One, and ALICE TRUMAN, Judge, Superior Court of Pima County, were designated to sit in their stead.

THOMAS C. KLEINSCHMIDT, Court of Appeals Judge, dissenting in part; concurring in part.

I respectfully dissent because in my view this is not a case for the invocation of the death penalty. I say that because I do not believe the crime was especially heinous and depraved. I also believe that the trial judge was improperly influenced by the statements of the mother of the murder victim.

The defendant, an alcoholic, had lived with his putative wife, Marlyn Bechtel, and her children for a number of years. It was not a happy family. As the children grew, they began to lead a life style which dis-

pleased the defendant greatly. He looked upon them as undisciplined, and as coming between himself and his wife.

The relationship between the defendant and his wife's seventeen-year-old daughter appears to have been particularly bad. For a considerable period of time before the killing they coexisted in the same household in a state of cold hostility.

On the night of the murder the defendant and his wife had an argument about the children. They went to bed about 10:30 in the evening and were awakened about three or four in the morning when the fifteen-year-old daughter came home. The defendant asked his wife if she knew where the girl had been. Sensing that the defendant wanted to start an argument, the wife got up and went downstairs to sleep in a chair. About twenty minutes later the defendant came downstairs and still wanted to fight. His wife was not paying attention to him, and after a short time he produced a pistol and shot her four times. The wife blacked out momentarily but then ran out of the house in an attempt to get help from neighbors.

While his wife was fleeing, the defendant proceeded to the seventeen-year-old daughter's room and kicked down the door. The girl swore at him, and he shot her in the head.

The defendant then ran after his wife, caught up with her and beat her over the head with the pistol until the weapon broke. He kicked her when she was on the ground and beat her head on some rocks. He then went back to the house and entered the daughter's room. She was still alive so, to kill her, he beat her over the head with a large, glass tonic water bottle until the bottle broke. Because the girl was still alive, he went to the kitchen for a knife and returned and stabbed her repeatedly until she was dead. The wife survived.

The defendant then got in his car and drove around for awhile before turning himself in to the police. When interviewed, the defendant gave a fairly complete account of events but was unable to remember some of the details. He kept repeating to the police that he did it because he "couldn't take it any more."

It is entirely true that the murder was committed in a brutal manner. Brutality alone, however, does not necessarily render a murder heinous and depraved. As the majority correctly notes, the focus of the inquiry is on the mental state and attitude of the perpetrator at the time of the act. It is appropriate to consider whether the defendant relished the deed, whether he mutilated the victim needlessly, whether the victim was helpless and whether he inflicted gratuitous violence on her. *State v. Fulminante*, 161 Ariz. 237, 256, 778 P.2d 602, 621 (1988); *State v. Gretzler*, 135 Ariz. 42, 52–53, 659 P.2d 1, 11–12, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). In summary, what the brutality of this murder tells us about the defendant is that he was berserk and bungling. I turn, however, to a more detailed consideration of the factors set out in *Fulminante* to see how they may apply in this case.

First, there is nothing to show that the defendant relished the killing. The state does not contend otherwise.

The factors of mutilation and the infliction of gratuitous violence are, in this case at least, interrelated. Here, after being shot, the victim did not die. The defendant had discarded his broken gun, so he beat the victim with a bottle. When she still failed to succumb, he stabbed her repeatedly. The mutilation that occurred was not mutilation for its own sake but was the result of the crude methods to which the defendant, in his rage, resorted. Not all of the violence was gratuitous. Much of it was simply an attempt to accomplish the deed. In my opinion, to the degree that the record does establish gratuitous violence, such is, without more, simply insufficient to justify a sentence of death.

The majority cites two cases, *State v. Wallace*, 151 Ariz. 362, 728 P.2d 232 (1986), *cert. denied*, 483 U.S. 1011, 107 S.Ct. 3243, 97 L.Ed.2d 748 (1987); and *State v. Carriger*, 143 Ariz. 142, 692 P.2d 991 (1984), *cert. denied*, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985), for the proposition that

particular brutality will support a finding that a murder is especially heinous or depraved. In *Wallace,* the defendant beat the victims with uncommon savagery even though he could have killed them with his pistol. In *Carriger,* the court did not rely on the brutal nature of the killing alone for its finding that the crime was especially heinous and depraved.

It is true that the victim in this case was helpless in the sense that she was unarmed and was taken completely by surprise. I give this characterization relatively little weight in determining whether the death penalty can be applied because experience and common sense suggest that a great many, perhaps even most, victims of first degree murder are helpless.

It may be appropriate to categorize a murder as "senseless," for death penalty purposes in cases like *State v. Zaragoza,* 135 Ariz. 63, 659 P.2d 22, *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983), where it was unnecessary to kill the victim to accomplish the defendant's other criminal goals, or in cases like *Carriger,* where the killing was not necessary to effect the defendant's escape. Here, murder—a murder born of hatred and rage—*was* the goal. I do not think it advances the inquiry much in a case like this to observe that the crime was senseless.

Something else about this case bolsters my confidence in my own assessment of this crime. The case was originally the subject of a plea agreement that called for the defendant to receive a sentence of life imprisonment with no possibility of release on any basis until 25 calendar years were served for murder and a consecutive 21 years for the assault on the wife. The matter proceeded through a change of plea proceeding, through a presentence hearing pursuant to A.R.S. section 13–703(B) and through sentencing. Before sentencing, the defendant moved to withdraw his plea, but this was denied. The defendant was sentenced to life imprisonment and a consecutive 21 years in accordance with the plea agreement. A subsequent petition for post conviction relief was granted on the grounds that the defendant's motion to withdraw from that agreement had been timely and should have been granted as a matter of right. The plea and sentence were set aside, and the defendant was tried before a jury, found guilty and sentenced to death by a different judge than the one who had imposed the life sentence.

As this case progressed through the court the first time, there was not the slightest suggestion that this was a crime that cried out for the death penalty. The detective who investigated the case thought the plea agreement was appropriate and so did the adult probation officer who wrote the presentence report. The deputy county attorney urged the judge to accept the plea agreement and the judge, at the first sentencing, specifically found that no aggravating factors existed.

I do not mean to suggest that the state is forever foreclosed from seeking the death penalty just because it once agreed to a life sentence, or that the imposition of a life sentence will preclude a subsequent death sentence for the same crime if resentencing to death is otherwise authorized and appropriate. There may be many reasons, a weak case being the one that comes to mind first, for the state to settle for a life sentence even when a death sentence would be truly appropriate. Indeed here, the prosecutor told the author of the presentence report, which was prepared after the defendant had been convicted by a jury, that the prosecutor had originally agreed to the life sentence to save the defendant's wife and her surviving fifteen-year-old daughter the ordeal of a trial. No such explanation was offered when the defendant originally pled guilty and was sentenced, and one could argue that if the death penalty was truly appropriate, the desire to spare the family further trauma was not a sufficient reason to forego the effort to inflict that sentence. But that aside, from all that this record shows, neither the investigating officer, the probation officer nor the judge weighed this desire to save the family the ordeal of a trial in considering whether the original life sentence was appropriate. From all this record shows, they simply believed that a

life sentence was the correct punishment for the crime.

Wretched stories like this one are played out all over this country with regularity. An ineffectual member of a dysfunctional family smolders, ignites, and kills. In this case, rage, however unprovoked or inappropriate, coupled with an unintended failure to kill quickly, account for the manner in which the defendant murdered his victim. I would vacate the sentence of death and resentence the defendant to life imprisonment on his conviction for first degree murder.

I also disagree with the majority on the question of the victim impact statement. Assuming that *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) does not automatically apply to sentences imposed by a judge alone, I believe that this record reflects that the sentencing judge, in finding that the crime was especially heinous and depraved, was influenced by the testimony given by Marlyn Bechtel, the murder victim's mother, at the sentencing hearing. The mother's testimony was not confined to the effects of the defendant's assault upon herself. She told the judge about the great difficulty she has had dealing with her daughter's death and how she had, after a long fight with the state for custody, taken over the rearing of the victim's child, her grandson. She characterized the murder as "senseless" and "depraved" and exhorted the judge to impose the death penalty.

In the supplemental presentence report the judge was told in more detail about Marlyn Bechtel's difficulty in securing custody of her grandchild and how she fears for his future welfare. The report reflects her strong urging that the defendant receive the death penalty.

At the time of sentencing the trial judge observed, among other things, that in deciding to impose the death penalty she was considering the fact that the victim's child was left without a mother. Thus, she made at least one explicit reference to the impact on a victim. In addition, the judge's finding, wholly unsupported by the record, that the murder victim suffered "immense physical and mental pain," suggests that her attention had been diverted from proper sentencing considerations. Accordingly, since under the decision of the majority the defendant still faces a possible death sentence, resentencing should be conducted before a judge who has not been exposed to influences improper under *Booth*.

I agree with the majority that the judge should not have considered the defendant's prior conviction as an aggravating circumstance. As I have already indicated, I also agree that the evidence will not support a finding that the murder was especially cruel.